■ ROBERT DOLMAN, Respondent, v. UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee under the Will of EUGENE HIGGINS, Deceased, Appellant. Appeal from a judgment of the Supreme Court in favor of plaintiff, entered June 28, 1955, in New York County, upon a decision of the court at Trial Term, without a jury. This appeal brings up for review (1) an order of the Supreme Court at Special Term, entered October 21, 1954, in New York County, which denied a motion by defendant to dismiss the complaint for insufficiency (206 Misc. 929), and (2) an order of said court, entered February 3, 1955, in said county, which denied a motion by defendant for judgment on the pleadings.

Judgment affirmed.

Cox, J. (dissenting). Plaintiff instituted this action against defendant executor to recover damages for breach of a covenant of quiet enjoyment contained in a lease for a term of five years beginning May 1, 1952, which had been granted to plaintiff by defendant as executor of the estate of Eugene Higgins. Higgins died on July 28, 1948. Before his death he had owned parcels of land at and near 96th Street and Riverside Drive in the borough of Manhattan. Part of his holdings had been taken in condemnation by the City of New York as a site for the erection of a public school building, all of that particular parcel having been used for that purpose, so that none of it was available for the construction of a schoolyard or playground. There remained on that block, however, somewhat west of the school another parcel of unimproved land belonging to Higgins which he had previously leased to plaintiff for a two-year term ending May 1, 1949. After his death the present defendant, United States Trust Company of New York, was appointed executor of his estate and at the expiration of the lease plaintiff continued to occupy the leased premises as a statutory tenant. Incidentally, plaintiff had during his tenancy subleased the property to another party who used it as a commercial parking lot, although the lease prohibited reletting.

As early as September, 1949, defendant had probed the possibility of the acquisition by the board of education of this property for use in establishing a playground in connection with the school. Correspondence between defendant and the board elicited the fact that subsequently the board on November 10, 1949, approved a resolution requesting the board of estimate to acquire this and certain other property "by the institution of condemnation proceedings or otherwise". After this item appeared on the calendar of the board of estimate, further negotiations were conducted with the city authorities to the knowledge of plaintiff, but they were discontinued because an agreement as to price could not be concluded. Because of this apparent impasse, defendant, sometime thereafter, leased the property to plaintiff for a five-year term. The written lease therefor contained a covenant of quiet enjoyment, a covenant against subletting, a covenant against oral modification and a covenant against underletting or alteration without the landlord's prior consent in writing. It also contained a condemnation clause, article sixth, by the terms of which the landlord retained an option to cancel the lease in the event of condemnation, leaving the tenant without any right to share in the award in condemnation or any apportionment of it.

Subsequently, on January 20, 1953, the city reopened negotiations with defendant and offered to purchase the property at the latter's own price. However, upon learning of the outstanding lease to plaintiff, it objected and then

decided on condemnation of the property provided defendant would give the city an option to purchase defendant's interest in any condemnation award which it might receive. These negotiations were instituted by the city and it is undisputed that the suggestion as to the manner of accomplishing the condemnation emanated from the city. Defendant was totally unfamiliar with this procedure but agreed to its adoption, executed the desired option, and the property was condemned. Defendant then, under the terms of the condemnation clause in its lease to plaintiff, exercised its own optional right to terminate the lease and so notified the tenant.

It is true that the covenant of quiet enjoyment imposes upon the landlord a severe obligation (*Ganz* v. *Clark*, 252 N. Y. 92; *Fifth Ave. Bldg. Co.* v. *Kernochan*, 221 N. Y. 370; *Williams* v. *Getman*, 114 App. Div. 282; *Al's 334 9th Ave. Corp.* v. *Herbener*, 275 App. Div. 904; *Lindwall* v. *May*, 111 App. Div. 457). However, the above cases relied upon by plaintiff are distinguishable from the case at bar. Principally, plaintiff relies on the decision of Special Term in this case on a motion made by defendant to dismiss the complaint for insufficiency (206 Misc. 929).

The essential factor in this case is the intention of the parties. Such intention must be ascertained from an examination of the entire lease and not from any particular clause. (*Bovin* v. *Galitzka*, 250 N. Y. 228, 232.) In the contract of lease herein, express words are used to manifest a limitation or condition, the object intended being a termination of the lease at the option of the lessor if the city effected a condemnation.

It seems clear from the testimony that plaintiff was aware of the city's interest in the property. Defendant's witness, Haley, testified without contradiction that over a period of several years he had discussed with plaintiff the city's interest. It must necessarily follow in view of this that both parties are to be regarded as appreciating the purpose and meaning of the condemnation clause. Whether article sixth is a condition subsequent or a conditional limitation is unimportant under the facts of this case. There are, of course, numerous cases indicating subtle distinctions between the two (*Burnee Corp.* v. *Uneeda Pure Orange Drink Co.*, 132 Misc. 435), but these too are unimportant here.

Defendant landlord notified plaintiff lessee by letter dated August 20, 1953, that the city proposed to acquire the leased premises for a school playground and that pursuant to article sixth, should the city exercise its right to condemn the property for such public use, the landlord elected that the lease become null and void pursuant to the provisions of article sixth.

The contingency thus contemplated by article sixth occurred, defendant exercised its option and the lease was terminated. As a matter of fact, condemnation alone would have effected a termination of the lease regardless of other considerations necessarily involved. (Cf. *Miller* v. *Levi*, 44 N. Y. 489; *Norman S. Riesenfeld, Inc.*, v. *R-W Realty Co.*, 223 App. Div. 140, 145–148, and *6th Ave. & 24th St. Corp.* v. *Lyon*, 193 Misc. 186, affd. 275 App. Div. 651.)

In the face of this situation, plaintiff nevertheless insists that regardless of the validity of the condemnation proceeding, defendant induced, instigated and facilitated it and co-operated with the city in effecting it.

There is certainly no persuasive evidence in the record to indicate either that defendant induced the city to condemn the property or initially offered the city an option to purchase a condemnation award. On the contrary, there is a sufficient basis of evidence from which it reasonably may be concluded that it was the city's representatives who first suggested, and then indeed required, such an option. In fact, it is shown that defendant's representatives never heard of the practice of giving the city an option of this kind until plaintiff's witness, Melaccio, of the board of estimate's bureau of real estate, told them about it.

Nor is the language employed in the form of option, supplied to defendant by the city's representatives, in any way determinative.

, The parties to this contract of lease are bound by its terms. Article sixth provided for a termination of the lease and afforded defendant the option of voiding it on the occurrence of the prescribed contingency — condemnation. The language of article sixth is clear and definite. Therefore, it makes no difference, in any event, whether or not defendant induced, facilitated or co-operated in the condemnation, although, as already stated, defendant did not induce it. Even if it had, it would have been assisting in the exercise of a legislative function for the public good. Certainly, it cannot be chargeable in damages for merely co-operating with the city, especially since it had been known to plaintiff all along that defendant was anxious to dispose of the property.

The courts are, and should be, reluctant to imply to an action of a legislative body, such as the board of estimate, performed for the public good, an improper motive, for the benefit of any private individual or for any private purpose. If the property is taken for public use, the action of the board of estimate, in the absence of fraud or corruption, is not subject to judicial review. (*Bacon* v. *Miller*, 247 N. Y. 311.)

While it is true that this action did not allege the invalidity of the condemnation nor does it collaterally attack it, nevertheless it indirectly attacks it by charging that the action of the board of estimate was induced and incited by this defendant for the personal gain of defendant and to the detriment of plaintiff.

Although at the trial plaintiff made no showing of a waiver of the convenant against subleasing, nor is there in the record any writing as required by the lease, nor does the brief mention the waiver, nevertheless defendant in his oral argument waived the defense of subletting. Whether a fiduciary had the right to waive that defense is of no consequence here. Nevertheless the subtenant was in possession at the time of the trial as a tenant of the city. Plaintiff would have been in possession if he had not sublet and up to that time would not have suffered any damages at all under the theory upon which the case was decided.

The judgment should be reversed and the complaint dismissed. This disposition renders consideration of appeals from orders entered October 21, 1954, and February 3, 1955, unnecessary as academic.

Peck, P. J., Bastow and Rabin, JJ., concur in decision; Cox, J., dissents and votes to reverse in opinion, in which Frank, J., concurs.

Judgment affirmed, with costs.