Conway, Ch. J.
This action was brought to recover damages for an alleged breach of the covenant of quiet enjoyment contained in the lease between the defendant as landlord and the plaintiff as tenant. It is claimed that the landlord breached the covenant by its inducement of and co-operation in the condemnation of the leased premises by the City of New York, resulting in the eviction of the plaintiff at the end of two years of the five-year term of the lease. Trial Term awarded plaintiff damages and the Appellate Division affirmed, two Justices dissenting.
Plaintiff first took possession of the land in question in 1941 from the then owner, Eugene Higgins. In 1947 the premises began to be used as a parking lot, plaintiff subletting the property to one Kane. Higgins died in 1948 and defendant, as testamentary trustee, took title to the property. After the expiration of plaintiff’s lease on May 1, 1949, defendant began negotiations for the sale of the property with the City of New York, the Board of Education having notified the Board of Estimate that the property was desired for a public school playground. That communication of the Board of Education was on the Board of Estimate’s calendar of December 8, 1949, and the matter was then referred to the City Planning Commission, the director of real estate, and the director of the budget for report. Desultory negotiations then followed with nothing being accomplished. On or about January 22, 1952, the defendant trustee had discussions concerning the status of the property with members of its own organization and its attorneys. At that time it was pointed out in the discussion that it might be a year or two before the city would acquire it, and that, therefore, rather than operate the property at a substantial loss, the defendant, as trustee, was obligated to secure the best price by waiting and, in the meantime, to enter into a lease with the tenant which would pay real estate taxes and insurance. The result was that on March 6, 1952 defendant notified the city that it intended to enter into a lease and inquired as to the city’s interest. Negotiations then broke off. Thereafter, on April 29, 1952, plaintiff, with knowledge of the foregoing negotiations, and defendant entered into a lease, which contained, among others, the following two clauses :
“ sixth: Should the hereby demised premises or any part thereof be condemned for public use, then and in that event, *113 upon the condemnation of the same for such public use, this lease shall at the option of the Landlord become null and void and the term cease with the same force as if the term herein had fully expired on the date when possession shall be required, anything herein contained to the contrary notwithstanding. The Tenant shall not be entitled to any part of the award or to any apportionment thereof.”
‘ ‘ twelfth : The said Landlord doth covenant that the said Tenant on paying the said rent and performing the covenants aforesaid, shall and may peaceably and quietly have, hold and enjoy the said demised premises for the term aforesaid.”
On January 20, 1953, the city contacted the defendant to inquire whether it would be willing to sell the property. This resumption of negotiations was commenced by the city as a result of the pressure brought by various civic groups to acquire the property for playground purposes in conjunction with Public School 75. The defendant, in view of the continuing operating loss, obtained an appraisal of the property, which was $132,000. In February of 1953, the city offered $135,000, which the defendant accepted and on March 16, 1953 defendant sent the city a copy of the proposed contract of sale along with a copy of the outstanding lease to the plaintiff. On March 18th, the city rejected the contract as drawn and returned the copy of the lease, stating that inasmuch as the property was to be used for a playground it must be free and clear of any incumbrances. The city then introduced the defendant, for the first time, to an agreement whereby the city would be given an option to purchase any condemnation award to which the defendant would be entitled upon condemnation. Such procedure is specifically authorized in section B15-30.0 of the Administrative Code of the City of New York, which section appears in title B of chapter 15 of the Administrative Code entitled “ Consolidated Condemnation Procedure ”. The agreement proposed by the city, which was entered into, provided that the city could purchase the assignment of the award for $135,000. On December 17, 1953, the Board of Estimate held a meeting and at that time unanimously resolved to authorize the corporation counsel’s office to institute condemnation proceedings and exercised the option to purchase the award in condemnation. The minutes of this meeting of the Board of Estimate clearly disclose that the acquisition of the property *114 was for a “ much sorely-needed playground.” The condemnation authorized also took in three other damage parcels adjacent to the parking lot, one of which was owned by a party other than the defendant. In April, 1954 title vested and the city applied in the Supreme Court for an order condemning the premises, and on April 30, 1954 an order granting such relief was made and entered in the New York County Clerk’s office.
Plaintiff then sued defendant for breach of the covenant of quiet enjoyment contained in the lease alleging: “ 17. The defendant wrongfully induced the City of New York to acquire the premises by condemnation in violation of the covenant of quiet enjoyment contained in the lease between the plaintiff and the defendant.”
In answering defendant’s demand for a bill of particulars, the plaintiff stated that: “ 7. The defendant’s acts, which induced the City of New York to acquire the premises by condemnation, were the option to sell to the city for $135,000 any award to which defendant would be entitled on condemnation of the premises and such other of defendant’s acts relating to said option, of which the plaintiff has no personal knowledge * * * ??
As we view the case, the fundamental issue presented is whether the landlord breached the covenant of quiet enjoyment by co-operating with the city to the extent of granting the city an option, pursuant to section B15-30.0 of the Administrative Code, to purchase for $135,000 its rights in the condemnation award in the event that the city thereafter condemned the property. We think it did not.
A covenant of quiet enjoyment is not breached by the landlord when the tenant is evicted by the sovereign’s exercise of its power to take by eminent domain, inasmuch as such a covenant goes only to the lessor’s title, and does not warrant against those fundamental liabilities to action on the part of the sovereign power which lie behind all private titles (see Goodyear Shoe Mach. Co. v. Boston Term. Co., 176 Mass. 115, per Holmes, Ch. J.). The rights of the lessee in the land owned by the lessor are held as the property of all citizens is held, subject to the exercise of the power of eminent domain by the sovereign and the exercise of that power by the sovereign does not constitute a breach of the covenant of quiet enjoyment by the landlord (see Kip v. New York & H. R. R. Co., 67 N. Y. 227, 229).
*115 In the present case no one can deny that the tenant was evicted by reason only of the exercise of the sovereign power of eminent domain and not by reason of the option given to the city by the landlord. The grant by the landlord of the option to purchase its rights in the condemnation award, in the event that the city thereafter condemned the property, did not constitute an interference by the landlord with the tenant’s possessory rights, did not accomplish an eviction of the tenant and did not lead necessarily or inevitably to an eviction of the tenant by the sovereign. The tenant’s possessory rights were not interfered with or destroyed until the land in question was subsequently condemned. Nor did the grant of the option to the city erüpower or enable the city to evict the tenant. The power of eminent domain possessed by the city, and through which the tenant was evicted, was not in any wise dependent upon the city’s obtaining an option from the landlord. It is true that by granting the option the landlord “ cooperated ” with the city, that is, the landlord assisted the city by placing it in a position to know, in advance, the cost to it of acquiring the landlord’s property by eminent domain. However, before holding that that type of co-operation creates an exception, in favor of the tenant, to the rule that an eviction resulting from the exercise of the sovereign power of eminent domain does not render a landlord liable for a breach of the covenant of quiet enjoyment, we would have to find some clear expression of intention to that effect in the lease. This must be, for to hold that the giving of the option to purchase renders the landlord guilty of a breach of the covenant of quiet enjoyment would be to render ineffective the legislative action in enacting section B15-30.0 of the Administrative Code in every case where there is present a leasehold interest. No property owner would be willing to follow such procedure for he would be buying himself a potential lawsuit brought by his leaseholding tenants. A great portion of New York City property is under lease and to put an end to or impair this common practice of the city, which serves the useful function of enabling the city to ascertain, with a reasonable degree of certainty, the amount of money which will have to be expended in order to obtain the parcels of land which it seeks, would be to cause great harm to the city.
We find no such clear expression of intention to that effect in the lease before us.
*116 In paragraph. “ sixth ” of the lease the parties expressly agreed that in the event of condemnation the “ lease shall at the option of the Landlord become null and void and the term cease with the same force as if the term * * * had fully expired on the date when possession shall be required, anything herein contained to the contrary notwithstanding.” The lease itself does not define what is meant by condemnation. Nevertheless, it is basic that, unless a contract provides otherwise, the law in force at the time the agreement is entered into becomes as much a part of the agreement as though it were expressed or referred to therein, for it is presumed that the parties had such law in contemplation when the contract was made and the contract will 'be construed in the light of such law (see 17 C. J. S., Contracts, § 330). Applying that rule of construction to the facts of this case, if the procedure followed by the defendant in our present case is considered to be condemnation or a mode of condemnation, which the city is authorized to follow by the Administrative Code of the City of New York, then the plaintiff in agreeing to the lease must be presumed to have agreed to lose any leasehold interest which he possessed when the provided-for statutory methods of condemnation were employed. As we stated earlier, the procedure followed by the city and the defendant, i.e., the purchase of the award, is specifically set forth in section B15-30.0 of the Administrative Code, which section appears in title B of chapter 15 of the Administrative Code entitled “ Consolidated Condemnation Procedure ”, and clearly must be considered to be a mode of the procedure of condemnation. Therefore, the city in arranging for the purchase of the award was actually following a mode of condemnation.
The tenant specifically agreed in unambiguous terms that in the event of condemnation the lease should become null and void at the option of the landlord and that he, the tenant, would not be entitled to any part of the condemnation award. Condemnation took place and the lease was terminated. By the present action the tenant seeks to avoid the effect of his agreement that he would not be entitled to any part of the condemnation award. In answer to that attempt, we can only repeat that the tenant’s eviction was the result of the sovereign’s exercise of its power to take by eminent domain and that a covenant of quiet enjoyment is not breached by the landlord *117 when the tenant is evicted by snch exercise. There is no forfeiture by the tenant of any interest save that to which he has agreed and to which he must be held.
For the foregoing reasons, we conclude that the defendant did not breach the covenant of quiet enjoyment and that the complaint should be dismissed.
The judgment of the Appellate Division and that of Trial Term should be reversed and the complaint dismissed, with costs to appellant in all courts.