Fred LOWENSCHUSS, Trustee for Fred
Lowenschuss Associates Pension Plan,
Individually and on behalf of all other
persons and shareholders of Great At-
lantic & Pacific Tea Co., Inc. who are
similarly situated, Plaintiff,

v.

W. J. KANE, et al., Defendants.

No. 73 Civ. 2021.

United States District Court,
S. D. New York.

July 25, 1973.

Fred Lowenschuss Associates, Philadelphia, Pa., Abraham E. Freedman, New York City, for plaintiff by Fred Lowenschuss, Philadelphia, Pa., Charles Sovel, New York City, of counsel.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendants W. J. Kane, H. J. Berry, R. M. Brown, Jr., W. Corbus, D. K. David, H. C. Gillespie, J. S. Kroh, E. A. LePage, R. F. Longacre, M. D. Potts, J. M. Schiff, P. A. Smith, H. Taylor, Jr., E. J. Toner, W. I. Walsh, N. F. Whittaker and J. A. Zeigler by William F. Sondericker, Joseph M. Burke, New York City, of counsel.

Cahill, Gordon & Reindel, New York City, for The Great Atlantic & Pacific Tea Co., Inc. by Raymond L. Falls, Jr., Allen S. Joslyn, Miles M. Tepper, New York City, of counsel.

Simpson, Thacher & Bartlett, New York City, for Gulf & Western Industries, Inc. and C. G. Bluhdorn by John A. Guzzetta, New York City, of counsel.

Sullivan & Cromwell, New York City, for Kidder, Peabody & Co., Inc. by William E. Willis, Mark I. Fishman, New York City, of counsel.

### OPINION

KEVIN THOMAS DUFFY, District Judge.

All parties have moved for summary judgment in this matter, which was transferred here from the Eastern District of Pennsylvania. The genesis of this action is found in the tender offer of Gulf & Western Industries, Inc. (hereinafter "G & W"), for a portion of the stock of the Great Atlantic & Pacific Tea Co., Inc. (hereinafter "A & P"). That tender offer was never consummated because of an order of this Court. See Gulf & Western Indus., Inc. v. Great Atlantic & Pacific Tea Co., Inc., D.C., 356 F.Supp. 1066, aff'd, 476 F.2d 687 (2nd Cir. 1973).

The defendants fall into three classes: (1) the officers and directors of A & P and A & P itself; (2) the chief executive officer of G & W and G & W itself; and (3) Kidder, Peabody & Co., (hereinafter "Kidder, Peabody"), the managing agent-broker-dealer of the tender offer.

The plaintiff is a lawyer who has created a pension fund for himself and his associates. He is suing in his capacity as trustee of that pension fund.

The tender offer by G & W for the A & P shares was approved by the Board of Directors of G & W and announced on February 1, 1973, with full publicity of the offer circulated on the following day, February 2, 1973. The offer provided for the purchase of 3.75 million

shares of A & P stock if tendered on or before February 13, 1973, at a price of $20 per share. Needless to say, as of February 2, 1973, the price of A & P stock was below the tender offer price.

On February 2, 1973, two things happened: (1) the management of A & P announced its opposition to the tender offer and indicated that it would take legal action to prevent the consummation of the tender offer; and (2) the plaintiff placed an order for 2000 shares of A & P stock, which order was executed in two transactions on the New York Stock Exchange. I make no finding as to which of these events took place first.[1] Thereafter, but before February 13, 1973, plaintiff tendered the A & P shares in accordance with the G & W tender offer.

On February 5, 1973, G & W filed a complaint charging A & P with violation of the Williams Act, § 14, of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78n because of alleged misrepresentations in its release opposing the tender offer. On the same day, A & P counterclaimed against G & W and Kidder, Peabody, the managing agent of the tender offer, claiming violations of the Williams Act (*supra*) and also violations of the antitrust laws.

A hearing was held on February 9, 1973, and on February 13, 1973, I filed an opinion and an order prohibiting G & W from the consummation of the tender offer. The defendant Kidder, Peabody was not enjoined as I found that it had acted merely as a "broker-dealer" and no showing had been made that it violated the law. An appeal was immediately taken from my order.

On February 15, 1973, the plaintiff filed this law suit in the Eastern District of Pennsylvania. At no time did the plaintiff or any member of the class which he asserts he represents attempt to intervene in the action before me, although it is clear that he and many others of the class were aware of the litigation. The plaintiff and others representing the alleged class were, however, permitted to intervene in the appeal from my decision and they fully set forth their claims and views there.

The present action sounds in contract. The complaint alleges that the G & W tender offer was an offer of a unilateral contract; that the offer was accepted by the plaintiff and members of the class by tendering A & P shares equal to or greater than the number of shares specified in the tender offer; that the contract was completed by the tender; that A & P, its officers and directors interfered with the contractual rights of the plaintiffs; and that defendants are obligated to pay to plaintiff and the other members of the class the tender offer price for their shares or, in the alternative, damages.

Plaintiff has stipulated to dismiss his complaint as against A & P and its officers and directors. Thus the only defendants left are G & W, Bluhdorn and Kidder, Peabody.

It should be emphasized that this case sounds only in contract. The plaintiff has filed a separate suit against the same defendants for alleged violation of the securities laws and particularly the Williams Act, *supra*. Although the plaintiff in his brief switches from claims sounding in contract to those in securities law, without compunction, it is clear to me that the question before the Court on this motion is one solely of contract law.[2] I would suspect that the

---

1. It should be of some interest to the appropriate body of the Pennsylvania Bar whether the plaintiff, a lawyer, truly purchased these shares as an investment for his pension plan or merely as a vehicle for this litigation in which counsel fees are sought.

2. I am not unmindful of the fact that pleadings under the Federal Rules of Civil Procedure are to be interpreted most liberally. If this were the only action filed by this plaintiff, I might consider that it could be construed as including the Williams Act claims. Plaintiff himself, however, has construed this action as one raising contract claims, not Securities Act violations. (See paragraphs 18 and 32 of the complaint in 73 Civ. 2931, which case, though filed in the Eastern District of Pennsylvania, has been transferred to this district and assigned to me as a related case.)

other action brought by plaintiff which involves allegations of violations of the securities laws will eventually be the subject of a similar motion, but I must defer any decision as to that issue until the question is properly before the Court.[3]

■ Before turning to the motions for summary judgment, it appears to me that a threshold question is presented, namely, whether the plaintiff may maintain this action as a "class action". I hold that this is a proper class action under Rule 23 of the Federal Rules of Civil Procedure. See e. g. Feder v. Harrington, 52 F.R.D. 178 (S.D.N.Y.1970). Here there are clearly common questions of law affecting all the members of the class of tendering stockholders; the class is so numerous that joinder of all the tendering stockholders is impractical yet the size and identification of the class is manageable; the claims of the plaintiff are typical of those of the class; and it appears to me that the plaintiff will fairly and adequately represent the interests of the class of tendering stockholders. Finally, the efficacy of a class action in this case is obvious. This is an action where a large number of tendering A & P shareholders may have been injured, but it is unlikely that the individual injuries would rise to a level sufficient to warrant individual suits. A class action provides a method for obtaining redress for these claims.

■ I must now consider the merits of the various motions. Kidder, Peabody has moved for summary judgment. I am constrained to consider this as a motion to dismiss the complaint under Rule 12(b) of the Federal Rules of Civil Procedure. As I have said, this complaint sounds solely in contract. The plaintiff admits that:

> "[i]t is, of course, clear that Kidder, Peabody's role in the making of the tender offer was that of 'dealer-manager' and, as such, it was not a party to the contractual relationship between G & W and the tendering shareholders of A & P stock."

No claim is made in the complaint that Kidder, Peabody interfered with the contractual rights of G & W and the plaintiff or the class which he represents. Accordingly, this complaint as against Kidder, Peabody must be dismissed.

The plaintiff's argument against this dismissal is founded in an argument that Kidder, Peabody "aided and abetted" G & W in violating the securities laws. That question must abide a determination on the plaintiff's other complaint where allegations of such violations are set out. In any event, there is no showing on the record before me that Kidder, Peabody knowingly and wilfully aided and abetted any violation of the Williams Act or of any other statute. In acting as dealer-manager of the tender offer, it is true that Kidder, Peabody transmitted the offer to others. But there is not the slightest scintilla of proof, much less a clear allegation, that Kidder, Peabody even knew or had reason to know, of any infraction.

Plaintiff has moved for summary judgment against G & W and Bluhdorn. It is plaintiff's argument that a tender offer is a unilateral contract conditioned only on the fact that sufficient shares be tendered as required by the offer.[4]

---

3. No motion has been made to consolidate the two cases.

4. A reading of the tender offer indicates that such an interpretation is not without substantial doubt. It seems to me that a tender offer is really a solicitation of offers from the tendering parties or in other words an "offer for an offer". Williston, in his treatise on contracts, suggests this view: "Ordinarily advertisement for bids or tenders is not itself an offer but the bid or tender is an offer which creates no right until accepted." Thus, no contract would arise until the acceptance of the tendered shares by the person publishing the tender offer. This view would demolish the plaintiff's claim of a violation of contract rights since no contract would ever have been created. However, I find it unnecessary to decide whether a contract actually existed, since in my view even if a contract was established, plaintiff cannot recover.

The relief sought is "payment for the shares of A & P stock that were tendered to G & W, or, *in the event that a determination is made that G & W may not accept the tendered shares that damages be awarded to plaintiff and the members of the class for the losses they have suffered by reason of the failure to complete the tender offer.*" (Plaintiff's memorandum, pp. 4 and 5; Emphasis in the original).

Plaintiff's first argument which seeks completion of the tender offer must fall. There can be no question that plaintiff cannot demand or force consummation of the tender offer. Inherent in every tender offer is the condition that the offer be held lawful by a court of competent jurisdiction if the tender offer is attacked. The Court of Appeals for the Second Circuit in Gulf & Western Indus., Inc. v. Great Atlantic & Pacific Tea Co., Inc. *supra,* in dealing with the claims of this plaintiff and others of this class, succinctly and unequivocally held that they, like G & W, have no "inherent right to proceed with an unlawful tender; a requirement of lawfulness is included by implication in every tender offer." 476 F.2d at 698.

▬ Thus, the only issue before this Court is whether plaintiff and the class of tendering shareholders he represents, can recover damages for the failure of the tender offer to proceed. Plaintiff's argument is based on his notion that at least by the 13th of February, 1973, a contract between the tendering shareholders and G & W existed and therefore when G & W failed to perform through no fault of the plaintiff, G & W became liable for damages. As was suggested earlier, whether in fact a contract existed is not at all clear. How-

ever, even assuming *arguendo* that a contract did exist, it is this Court's view that the plaintiff is not entitled to recover.

Defendants seek to justify their non-performance of the tender offer by application of the doctrine of impossibility. It has long been held that where the occurrence of an event, circumstance, or governmental intervention not caused by any party renders performance impossible, the contract is extinguished, and all parties to it are automatically discharged. See Frenchman & Sweet, Inc. v. Philco Discount Corp., 21 A.D.2d 180, 249 N.Y.S.2d 611 (1964); Geo. Colon Contracting Corporation v. Morrison, Sup., 162 N.Y.S.2d 841 (1954), aff'd 2 A.D.2d 869, 157 N.Y.S.2d 927 (1956); 119 Fifth Avenue v. Taiyo Trading Co., 190 Misc. 123, 73 N.Y.S.2d 774 (1947), aff'd 275 App.Div. 695, 87 N.Y.S.2d 430 (1949); Dolman v. United States Trust Co., 206 Misc. 929, 134 N.Y.S.2d 508, aff'd 1 A.D.2d 809, 148 N.Y.S.2d 809, rev'd on other grounds, 2 N.Y.2d 110, 157 N.Y.S.2d 537, 138 N.E.2d 784;[5] See also Restatement of Contracts, §§ 457 and 458.

The plaintiff, however, argues that defendants cannot be relieved of liability since the illegality intervening between the "contract" and execution was caused by the defendants. It is true that one who causes a supervening governmental interference cannot avail himself of the doctrine of impossibility. General Aniline & Film Corp. v. Bayer Co., Inc., 305 N.Y. 479, 113 N.E.2d 844 (1953); Seedman v. Friedman, 132 F.2d 290, 296 (2nd Cir. 1942). The New York Court of Appeals in General Aniline & Film Corp. v. Bayer Co., Inc., *supra,* 305 N.Y. 479, 113 N.E.2d 844 (1953), made clear that to be barred from raising this de-

---

5. This Court finds that the New York law must be applied in determining whether the doctrine of impossibility applies here. Even though jurisdiction of this suit is supposedly derived from the Securities Acts, I find it appropriate to look to New York law regarding questions of contract law since the offer and acceptance and at least part of the performance involved in this contract was to take

place in New York. Further, federal law as to the application of the doctrine of impossibility is identical to that of New York law. See Seedman v. Friedman, 132 F.2d 290 (2nd Cir. 1942) (a federal bankruptcy case), and the Kronprinzessin Cecilie, 244 U.S. 12, 37 S.Ct. 490, 61 L.Ed. 960 (1917) (an admiralty case).

fense a party must have affirmatively, intentionally and directly caused the impossibility. It is plaintiff's contention that the impossibility here is based on a determination that the tender offer is unlawful because its consummation would result in violation of the antitrust laws and that certain papers released in conjunction with the offer violated the Securities Acts. The impossibility here, at least to the extent it is based on the antitrust violations, cannot be said to be caused by any particular party. If there be an antitrust violation here, it is the result of the juxtaposition of facts which were not intentionally incurred by defendants.

The defendants have from the beginning denied that in fact the acquisition of the tendered shares would create potential market conditions violative of the antitrust laws. Nor have defendants acknowledged that they have violated the Williams Act. It cannot be suggested that defendants have sought to extract themselves from this contract by their own purposeful acts. On the contrary, they have vigorously sought to defend against such alleged violations.

In a very real sense there is in this case, in its present posture, no illegality or unlawfulness but rather impossibility. As was made explicitly clear in my opinion prohibiting the consummation of the tender offer and in the affirmance of that opinion by the Court of Appeals, the merits of the alleged violations of the securities and antitrust laws have not been determined. At most, what is apparent is that the issues surrounding these alleged violations are substantial and difficult. The impossibility in this case rests on the finding of this Court, affirmed by the Court of Appeals, that issues raised by A & P, not G & W, are such that preliminarily this tender offer should not go through. If any party is going to be characterized as an efficient cause of the impossibility here, then A & P must bear that stamp, not G & W.

Even if it were this Court's finding that G & W had by its acts caused some sort of illegality here, plaintiff could not recover. As the Restatement of Contracts (1932) states in § 599(b), " . . . a party who . . . may discover before or during performance the facts that render the bargain illegal . . . cannot recover for any performance rendered after the discovery." Thus, to recover a party must be ignorant of the facts constituting the illegality at the time the contract becomes irrevocable for him. As plaintiff stated in his papers, he tendered the shares some time after the 2nd of February and before the 13th of the month. As of the 5th of February, all shareholders of A & P can be held to be on notice [6] of the pendency of the litigation regarding the propriety of the tender offer, and clearly the result of this litigation is the basis of the impossibility of performance here. At that time, under the terms of the tender offer any tendering shareholder could have withdrawn his shares. The contract was not to be final until the end of the day on the 13th of February. Thus, even if this Court were of the persuasion that there were illegality here, it must be assumed that plaintiff was on notice of the facts comprising the impossibility, namely allegations of Antitrust and Securities Acts violations to an extent which would preclude his recovery.

The unsettling irony of this case is that plaintiff seeks damages for a contract which he asserts is breached and illegal, while at the same time continues to tender his shares in hopes of the ulti-

6. Plaintiff and the other members of the class, who have been characterized by plaintiff as "intelligent and alert" investors, can be held to be on notice of the possibility of litigation over the tender offer as early as the 2nd of February, when the President of A & P released a statement of opposition to the offer which was carried over the Dow-Jones tape. Further, the actual inception of the litigation between G & W and A & P on the 5th of February received very wide publicity in newspapers of general circulation, as well as business journals.

mate consummation and performance of that very contract.

All of this might suffice to deny the plaintiff's motion for summary judgment. There is moreover, serious question as to the issue of what, if any, damages the plaintiff and the class he represents have sustained. This point has not been briefed by either side. But I seriously question what, if anything, could be assessed as damages. The defendants have extended the tender offer three times but each extension of the offer has permitted plaintiff and the class which he represents to withdraw any shares which may have been tendered. Plaintiff and the class, thus, have not been deprived of the use of their shares.

Plaintiff apparently seeks to have the defendants execute its tender offer to buy the shares (or at least pay for them) and "sterilize" them so that defendants could not exercise control over them. This precise argument was made by this plaintiff in the Court of Appeals and was rejected by that Court.

G & W claims that it "has been discharged from its obligations under the offer [by the order of this Court as affirmed by the Court of Appeals]. As a result, it owes no duty to pay damages to disappointed shareholders." (G & W Reply Memorandum, p. 6.) On this basis, *inter alia*, G & W and Bluhdorn have moved for summary judgment. The motion must be granted but for reasons much more limited than those stated by the defendants.

■ While a tender offer is in effect (even an extended one as here) the person or persons making the offer do have obligations. They have a duty of dealing fairly with the persons making the tender. There is no evidence that the defendants have done anything other than deal fairly with plaintiff and the class he represents. However, since plaintiff and the class he represents have suffered no damage cognizable at law, the complaint must be dismissed.

Settle order on notice. The plaintiff is to bear the costs of this action and also the costs of notifying the members of the class he represents.