Fred LOWENSCHUSS, Trustee for Fred Lowenschuss Associates Pension Plan, Plaintiff,

and

Rachel C. Carpenter, Plaintiff-Intervenor,

and

The McIntosh Foundation, Plaintiff-Intervenor,

v.

C. G. BLUHDORN, Gulf & Western Industries, Inc., and Kidder, Peabody & Co., Incorporated, Defendants.

Nos. 73 Civ. 2021, 73 Civ. 2931 and 76 Civ. 3557.

United States District Court, S. D. New York.

June 14, 1979.

Fred Lowenschuss Associates, Philadelphia, Pa. by Fred Lowenschuss, William D. Parry, New York City, Clark, Wulf & Levine, New York City by Alan Levine, New York City, for plaintiff Lowenschuss.

Barrett, Smith, Schapiro, Simon & Armstrong, New York City, co-class counsel and counsel for plaintiff-intervenor The McIntosh Foundation; Warren H. Colodner, Joel M. Gross, New York City, of counsel; Milton Paulson, New York City, co-class counsel.

Simpson, Thacher & Bartlett, New York City, for defendants Gulf & Western and C. G. Bluhdorn; Roy L. Reardon, Barry R. Ostrager, Dennis G. Jacobs, Ben Wiles, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendant Kidder, Peabody & Co., Inc.; William E. Willis, Charles E. Wilson, New York City, of counsel.

## MEMORANDUM

BONSAL, Senior District Judge.

After six years of litigation, the Court is asked to approve a proposed settlement of this class action as fair, reasonable, and adequate. Pursuant to the notice to the class, a hearing was held on January 16, 1979 at which the only objection to the settlement was made by plaintiff Lowenschuss.

### Background of the Litigation

On February 2, 1973, Gulf & Western Industries, Inc. ("G&W") made a tender offer to purchase 3,750,000 shares of common stock of Great Atlantic & Pacific Tea Co., Inc. ("A&P"), representing about 15 percent of A&P's outstanding shares, at $20 per share. A&P issued a press release opposing the tender offer. In response to G&W's offer, 3,806,769 shares of A&P were tendered to G&W. On February 5, 1973, G&W sued A&P on the ground that A&P's press release was inaccurate and violated the Williams Act, § 14 of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78n. A&P counterclaimed seeking preliminary injunctive relief against G&W on the ground that the tender offer violated § 14 of the 1934 Act, as amended, and that the consummation of the tender offer would violate the antitrust laws. Section 1 of the Sherman Act, 15 U.S.C. § 1 (1970) and Section 7 of the Clayton Act, 15 U.S.C. § 18 (1970). On February 13, 1973, the District Court (Duffy, J.) issued a preliminary injunction enjoining the tender offer, *Gulf & Western Industries, Inc. v. The Great Atlantic & Pacific Tea Co.,* 356 F.Supp. 1066 (S.D.N.Y.1973), which was affirmed by the Court of Appeals on March 12, 1973. 476 F.2d 687 (2nd Cir. 1973). On March 14, 1973, G&W allowed tendering A&P shareholders to withdraw their shares. On July 25, 1973, G&W withdrew the tender offer.

The class action was brought by Fred Lowenschuss ("Lowenschuss"), as Trustee for Fred Lowenschuss Associates Pension Plan, individually and on behalf of all common stockholders of A&P who tendered their shares of common stock to G&W pursuant to the terms of the tender offer announced by G&W.

Lowenschuss instituted this action on February 15, 1973 in the United States District Court for the Eastern District of Pennsylvania. On April 2, 1973, the action was transferred to this district and assigned to Judge Duffy. On July 25, 1973, Judge Duffy granted plaintiff's motion to have the action designated a class action and granted summary judgment to the defendants dismissing the complaint on the merits. *Lowenschuss v. Kane,* 367 F.Supp. 911 (S.D.N.Y. 1973). Judge Duffy held that the preliminary injunction issued at the request of A&P made the consummation of the tender offer impossible which was not the fault of G&W and that plaintiffs had sustained no damages since the plaintiffs' A&P shares had been returned.

On May 27, 1975, the Court of Appeals reversed the district court holding that there existed material issues of fact with respect to the possible breach of contract and violation of the Williams Act by G&W which precluded the granting of summary judgment. 520 F.2d 255 (2nd Cir. 1975).

On May 7, 1976, the case was reassigned to this Court and thereafter class action certification was granted as to the contract claims and the Williams Act claims, §§ 14(d) and 14(e) of the Securities Act of 1934, 15 U.S.C. §§ 78n(d) and 78n(e). The class consisted of A&P common stockholders who tendered their shares in response to the G&W tender offer announced on February 2, 1973. The breach of contract claim alleged that the tender offer formed a binding contract between G&W and the tenderor under the terms of the tender offer and alleged that G&W was not relieved of its obligation under the offer by reason of the Court injunction since such injunction resulted from the fault of G&W. The Wil-

liams Act claim alleged that defendants G&W and Bluhdorn, Chairman of the Board of G&W, omitted material facts in the tender offer which defendants knew or should have known were necessary to make it not misleading, such as (1) that it was G&W's intention to control A&P or at least exercise influence over A&P's management and policies, (2) that A&P would likely oppose the tender offer, and (3) that G&W had holdings in other companies which rendered it likely that its acquisition of the A&P stock would result in violation of the antitrust laws by both companies. Plaintiff also alleged that defendant Kidder, Peabody & Co. aided and abetted Bluhdorn and G&W and that there was a conspiracy among the defendants to gain control of A&P.

On June 1, 1976, the Court granted Rachel C. Carpenter's ("Carpenter") motion to intervene in the action. Carpenter had tendered 1,957,012 shares of A&P common stock representing about 55% of the shares tendered.

In the Spring of 1977, Lowenschuss, coclass counsel Milton Paulson ("Paulson"), Carpenter's counsel, and Arnold Levin ("Levin"), Lowenschuss' counsel, entered into settlement negotiations which culminated in a settlement proposal in the amount of approximately $4,360,000 of which $1,250,000 would have been paid to Carpenter (approximately $.64 per share) and the remaining amount to the other members of the class to be distributed as follows: (1) all tendering shareholders (other than Carpenter) to divide $1,746,339 (approximately $.95 per share); (2) all persons who bought A&P shares after the public announcement of the G&W tender offer and then tendered to divide an additional $861,000; and (3) those persons who held A&P shares before the tender offer and could prove that they would have sold their shares at a particular time and price while their shares were frozen during the Court proceedings from February 14 to March 13, 1973 to receive an additional $.28 per share up to an aggregate maximum of $502,037. The negotiations broke off in June, 1977. Although Carpenter (supported by the McIntosh Foundation)

sought to compel consummation of this settlement on the grounds that there had been a settlement reached before the negotiations broke down, the Court, following an evidentiary hearing on January 23 and 24, 1978, denied the motion, finding that no settlement had been entered into.

Meanwhile, on September 12, 1977, defendants moved to disqualify Lowenschuss as class representative and Levin as class counsel. By memorandum order of April 20, 1978, this Court granted defendants' motion, holding that Lowenschuss had evidenced a conflict of interest with the class.

In the Spring of 1978, G&W suggested a proposed settlement to the class whereby G&W would pay approximately $.30 per tendered share. This offer was rejected by class counsel.

On July 31, 1978, the parties entered into the present settlement agreement.

On September 14, 1978, the Court appointed the McIntosh Foundation, which had tendered 200,000 shares of its A&P stock to G&W, class representative to succeed Lowenschuss, and Barrett Smith Schapiro Simon & Armstrong ("Barrett Smith") were appointed co-class counsel with Paulson.

On October 26, 1978, the Court approved the notice to the class of the proposed settlement and fixed January 16, 1979 as the hearing date.

Carpenter had entered into a stipulation of settlement with G&W pursuant to which G&W paid $600,000 (approximately $.30 per share) for a private settlement of her claim against G&W and her action was dismissed on November 21, 1978.

On January 10, 1979, Lowenschuss, the original class representative, filed a notice of intention to appear at the hearing and a statement of objections to the proposed settlement. Lowenschuss appeared at the hearing in support of his objection. No other objections were made.

*The Proposed Settlement*

The stipulation of settlement of July 31, 1978 was entered into by Levin, former

class counsel for Lowenschuss, Paulson and Barrett Smith, present class counsel, Mordecai Rosenfeld, counsel for two individual members of the class, and Simpson Thacher & Bartlett ("Simpson Thacher"), counsel for defendant G&W. The total amount offered by G&W was $1,750,000 or $.94 for each A&P share properly tendered and for which a proof of claim and release is submitted and approved. G&W is to be liable only for that amount (up to $1,750,000) for which proofs of claim are actually submitted and approved, any amount unclaimed by the class to remain with G&W.. The original date for filing of proofs of claim and releases was January 30, 1979 and was extended to May 15, 1979. The proposed settlement originally contemplated that attorneys' fees and disbursements on behalf of the class would be deducted from the settlement. On May 30, 1979, the proposed settlement was amended to provide that G&W would contribute up to $150,000 toward attorneys' fees and disbursements as approved by the Court.

### The Hearing

At the January 16, 1979 hearing, class counsel, Barrett Smith and Paulson, former class counsel for Lowenschuss, Levin, and G&W's counsel, Simpson Thacher, supported the proposed settlement as being fair, reasonable, and adequate.

Plaintiff Lowenschuss alone objected to the settlement, contending, *inter alia,* that there was a substantial likelihood of success, that the proposed amount of $.94 per share was inadequate, that there had not been adequate discovery, and that defendants were able to withstand a greater judgment.

### Discussion

In order to approve this proposed settlement, this Court must determine that it is fair, reasonable, and adequate to the absent class members. *See, City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974); *Beecher v. Able,* 72 F.R.D. 518 (S.D. N.Y.1976). In order to make this determination, the Court is to consider "the likelihood of establishing liability and the consequent probable reward in damages, balanced against the amount offered in settlement." *Bonime v. Doyle,* 416 F.Supp. 1372, 1379 (S.D.N.Y.1976), *aff'd,* 556 F.2d 554 (2d Cir. 1977), citing *State of West Virginia v. Chas. Pfizer & Co.,* 314 F.Supp. 710 (S.D.N. Y.1970), *aff'd,* 440 F.2d 1079 (2d Cir. 1971), *cert. denied sub nom. Cotler Drugs, Inc. v. Chas. Pfizer & Co.,* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971).

As to the first factor, the likelihood of establishing liability, there appear to be serious questions in establishing both the contract and Williams Act claims.

In reversing the grant of summary judgment in favor of defendants, the Court of Appeals found that the tender offer constituted "a binding contract between G&W and the tenderor." 520 F.2d 255 at 265. However, the Court noted that the defendant G&W's claim of impossibility was an issue of fact to be determined at trial. 520 F.2d 255 at 265–66. Moreover, the Court indicated that in order to defeat defendant's defense of impossibility, the plaintiff would have to establish that defendant made the tender offer *knowing* that antitrust problems would result from its consummation. 520 F.2d 255 at 266. This would present a very heavy burden, and in view of the passage of time would be extremely difficult to carry.

Turning to the Williams Act claim, the Court of Appeals stated that "mere allegation of proof of omissions from G&W's tender offer statement will not state a claim under § 14(e); plaintiff must establish culpability on the part of the defendants, (citations omitted), and the materiality of the alleged omissions, (citations omitted)." 520 F.2d 255 at 268. This also places a very heavy burden on the plaintiff.

Even if liability were established at trial, there remains the measure of damages, *Newman v. Stein,* 464 F.2d 689 (2d Cir. 1972), *cert. denied,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488; *Bonime v. Doyle, supra.*

With respect to the contract claim, the Court of Appeals suggested that the amount of recovery would be " 'the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages . . .' N.Y. Uniform Commercial Code § 2–708(1), McKinney's Consol. Laws, c. 38." 520 F.2d 255 at 267. This would amount to the difference between the tender price of $20 per share and the market value at the time of the tender which ranged from $18.15 to $18.50 or $1.50 to $1.85 per tendered share, as compared to $.94 per tendered share offered in settlement.

With respect to the Williams Act claim, plaintiff must also establish damage as a result of defendant's violation. G&W offered to purchase A&P stock at $20 per share and it is not disputed that it could have paid this amount. While the tender offer was outstanding, A&P stock sold between $18.15 to $18.50 per share. During the years following defendant's withdrawal, the price of A&P stock has declined to about $7.75 per share.* Therefore, had it not been for the attack by A&P, presumably the tender offer would have been completed and the tendering stockholders would have received $20 per share. If they had, they would not have been concerned with possible antitrust problems or possible violations of the Williams Act. This points up the very serious problem the plaintiff would have if this case went to trial since to recover damages, plaintiff would have to prove that G&W misled the tenderors with regard to the antitrust problems and that the tenderors relied on G&W's misrepresentations. Furthermore, the Court of Appeals stated that "[t]o recover anything [under the Williams Act claim] the class members must assume the burden of proving with reasonable certainty, (citation omitted), that they would have sold their shares at a particular price or time if the shares had not been frozen." 520 F.2d 255 at 269.

(Referring to February 14 to March 13, 1973 when the shares were frozen by Court proceedings.) After six years, it is unlikely that many class members could make such a showing.

Given the substantial litigation risks, the uncertainty in the amount of damages and counsel's own estimate of the evidence, this Court cannot say that the likelihood of establishing liability and the consequent probable reward in damages would be substantially more than the amount offered in settlement.

As to Lowenschuss' suggestion that there has not been sufficient discovery, the Court is satisfied that the discovery heretofore taken and the record of the antitrust action brought by A&P against G&W is sufficient for the purpose. *See, City of Detroit v. Grinnell Corp., supra.*

■ As Lowenschuss suggests, there is no doubt that defendant is financially able to pay far more and that this is a factor to be considered. *City of Detroit v. Grinnell Corp., supra.* However, standing alone, this will not defeat approval of the settlement.

### Conclusion

In view of the foregoing, the settlement is approved as fair, reasonable, and adequate. Fed.R.Civ.P. 23(e). The Court will retain jurisdiction in order to fix plaintiff's attorneys' fees and disbursements.

Settle Judgment on Notice.

---

* New York Times, June 12, 1979, p. D8, col. 1.