Town of Ithaca, Respondent, v Village of Cayuga Heights, Appellant. (Action No. 1.)

Rocco Lucente, Respondent, v Village of Cayuga Heights, Appellant. (Action No. 2.)

Third Department, November 25, 1992

### APPEARANCES OF COUNSEL

*Holmberg, Galbraith, Holmberg, Orkin & Bennett,* Ithaca *(Anna K. Holmberg* of counsel), for appellant.

*Barney, Grossman, Roth & Dubow,* Ithaca *(Nelson E. Roth* of counsel), for Town of Ithaca, respondent.

*Williamson, Clune & Stevens,* Ithaca *(John Alden Stevens* of counsel), for Rocco Lucente, respondent.

### OPINION OF THE COURT

CASEY, J.

Pursuant to a contract with plaintiff Town of Ithaca (hereinafter the Town) executed in January 1965, defendant, the Village of Cayuga Heights (hereinafter the Village), granted the Northeast Sewer District, an improvement district within the Town in Tompkins County, permission to connect its sewer system with the Village's sewer system "for the purpose of discharging domestic sewage therein, and disposing of the same". New construction in the sewer district was required to connect to the system. The contract, which has a 35-year term, provided for earlier termination upon the happening of certain events, which have not occurred. Subsequent to its execution of the contract with the Town, the Village entered into similar agreements with other public and private corporations to provide sewage service outside its boundaries.

Concern about the capacity of its sewage treatment facilities prompted the Village to hire an engineering firm to conduct a survey of its waste disposal system. Based upon a draft report from the engineering firm, which indicated that the waste treatment facilities "have approximately reached their design capacity", the Village imposed a moratorium in December 1987 on sewer permits for new hook-ups outside its boundaries. After receiving the final report, the Village allocated a limited number of sewer permits to the municipalities with which it had contracts, including the Town, and additional permits were allocated when one of the private corporations served by the Village system completed a pretreatment facility. The Town's allocated permits have been used and no additional permits have been issued by the Village for new construction in the Town. No moratorium or restrictions on sewer permits was imposed for new hook-ups within the boundaries of the Village.

The Town commenced action No. 1 against the Village

seeking, *inter alia,* specific performance of its sewer agreement with the Village. Action No. 2, commenced by a developer who owns property in the Town for which subdivision approval had been granted by the Town, also seeks, *inter alia,* specific performance, on the theory that the developer is a third-party beneficiary of the sewer agreement between the Village and the Town. After the Village answered, the actions were joined and the Village and Town cross-moved for summary judgment. Supreme Court denied the Village's motion, granted the Town's cross motion and also granted summary judgment to the nonmoving developer, resulting in these appeals by defendant.

According to the Village, it is prohibited by State law from permitting new service hook-ups outside Village boundaries if its sewer system will thereby be rendered inadequate for the Village or its inhabitants. Because its sewage treatment facilities are approaching their design capacities, the Village contends that it must reserve whatever capacity remains for future development within the Village boundaries. The Village relies upon Village Law former § 260-b,* which is cited in the 1965 contract between the Town and the Village as the authority for the contract. When the contract was executed in 1965, the statute provided, in pertinent part: "The board of sewer commissioners may sell to a public or private corporation, or to an individual, the right to make connection with its sewer system for the purpose of discharging sewage therein from outside the village limits, and fix the term, consideration and conditions therefor. The board shall not sell nor permit the use of its sewer system under this section if thereby such sewer system will be rendered inadequate for the village or its inhabitants."

■ Supreme Court concluded that the restriction contained in the last sentence quoted above required the Village to determine, before entering into its contract with the Town, whether the needs of the Village could be met during the term of the contract and, if necessary, restrict the capacity to be contracted out by express conditions in the contract. Thus, according to Supreme Court, once the Village entered into its contract with the Town without expressly conditioning its contractual obligation on the adequacy of its system to serve the Village and its inhabitants, the Village was required to

---

* Village Law former § 260-b was repealed in 1972 (L 1972, ch 892, § 1) and reenacted as Village Law § 14-1404 (L 1972, ch 893, § 3).

provide service to the Town for the term of the contract without regard to its system's capacity to serve the needs of the Village and its inhabitants. We conclude that Supreme Court's analysis, which effectively imposes an absolute obligation on the Village during the term of the contract regardless of the capacity of the Village's sewer system, is erroneous, and neither the Town nor the developer is entitled to summary judgment.

In *Simson v Parker* (190 NY 19), the Court of Appeals held that the City of Tonawanda in Erie County lacked the authority to enter into what amounted to an ordinary contract between vendor and vendee to furnish during a specified term such quantity of water as the vendee might require. The charter provision which authorized Tonawanda to sell water outside of its boundaries provided, in language virtually identical to Village Law former § 260-b, that "the board shall not sell or permit the use of water under this section if thereby the supply for the city or its inhabitants shall be insufficient" (*supra,* at 21). The Court held that the charter provision authorized only a sale of surplus water and that a contract which, instead of limiting the obligation to furnish water to such surplus, imposed an absolute obligation to furnish as much water as a corporation outside of Tonawanda may require during the term of the contract was void (*supra,* at 23).

In keeping with the holding of *Simson v Parker (supra),* Village Law former § 260-b must be construed as authorizing only the sale of surplus or excess sewage capacity. Thus, if the Village's contract with the Town is not limited to the sale of excess sewage capacity, but instead imposes an absolute obligation on the Village to accept as much sewage as the Town may require during the term of the contract, the contract is void (*see, Simson v Parker, supra).* Unlike the contract in *Simson,* the Village's contract with the Town contains no provision for the payment of damages in the event that the Village fails to provide sewage service during the term of the contract. We conclude, therefore, that the contract can be construed as obligating the Village to sell only excess capacity during the term of the contract.

That the Village may have erred in its earlier assessments of the excess capacity available for contracting out, and may have been overzealous with regard to the number of contracts it executed for outside services, cannot give the Town any greater contractual rights than the Village was

authorized to grant by Village Law former § 260-b. Similarly, the absence of express conditions in the contract limiting the Village's obligation to the sale of excess capacity cannot give the Town any greater contractual rights than the Village was authorized to grant. A municipality's power to contract is statutorily restricted *(Modell & Co. v City of New York,* 159 AD2d 354, 355, *appeal dismissed* 76 NY2d 845), and a party contracting with a municipality is chargeable with knowledge of the statutes which regulate its contracting powers and is bound by them *(see, Parsa v State of New York,* 64 NY2d 143, 147). The Town, therefore, knew or should have known that Village Law former § 260-b restricted the Village's authority to provide sewage service to the sale of only excess capacity during the term of the contract, and the Town could have protected itself from the impact of the Village's subsequent contracts with other public and private corporations by express provision in its contract prohibiting or limiting such contracts.

■ Based upon our conclusion that the 1965 contract between the Town and the Village must be construed as selling to the Town only that which Village Law former § 260-b authorized the Village to sell, i.e., excess capacity during the term of the contract, it is clear that neither the Town nor the developer is entitled to summary judgment, for the Village's refusal to permit additional hook-ups in the Town is premised upon the lack of excess capacity. We also conclude, however, that the Village is not entitled to summary judgment, for the Village failed to submit sufficient evidence to establish that its sewage treatment facilities lack sufficient capacity to serve both the needs of the Town and the needs of the Village during the remaining few years of the contract.

■ As a final matter, we reject the Town's contention that the restriction based upon the adequacy of the sewer system to serve the needs of the Village and its inhabitants contained in Village Law former § 260-b is inapplicable. Although Village Law § 14-1404, the successor to Village Law former § 260-b, was amended in 1980 and no longer applies to a village's contract with a public corporation (L 1980, ch 388, § 17), it is the general rule that the law in force at the time the contract is entered into becomes a part of the contract *(Dolman v United States Trust Co.,* 2 NY2d 110, 116). The 1965 contract between the Town and the Village also expressly refers to Village Law former § 260-b as the authority for the contract. In any event, General Municipal Law § 119-a, which the Town

contends is the controlling statute, refers to contracts entered into by a municipality which is authorized to construct *"sewage facilities in excess of its own needs"* (emphasis supplied).

Accordingly, the orders and judgments should be modified so that none of the parties is granted summary judgment.

MIKOLL, J. P., YESAWICH JR., MERCURE and CREW III, JJ., concur.

Ordered that the order and judgment entered January 15, 1992 is modified, on the law, without costs, by deleting the second, third, fourth and fifth decretal paragraphs and substituting therefor a provision which denies the motion of plaintiff Town of Ithaca for summary judgment, and, as so modified, affirmed.

Ordered that the order and judgment entered March 6, 1992 is modified, on the law, without costs, by deleting the second and third decretal paragraphs and so much of the first decretal paragraph as grants summary judgment to plaintiff Rocco Lucente, and, as so modified, affirmed.