**Fred LOWENSCHUSS**

v.

**WEST PUBLISHING COMPANY.**

No. 75–620.

United States District Court,
E. D. Pennsylvania.

Oct. 17, 1975.

---

Max Meshon, Meshon & Brener, Philadelphia, Pa., for plaintiff.

James J. Orlow, Wasserman, Orlow, Kaye & Rubin, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

Plaintiff brought this action in the Court of Common Pleas of Philadelphia County, seeking injunctive relief and damages by reason of the defendant's having published in its Federal Supplement an opinion of a United States district judge containing allegedly false and defamatory references to the plaintiff. The action was removed to this Court, and the defendant has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff has filed a motion for summary judgment. The defendant has objected to plaintiff's motion on the ground that defendant has not yet filed a responsive answer to the complaint, and that the facts asserted by plaintiff are not uncontroverted, but merely assumed to be true for purposes of the motion to dismiss. Nevertheless, the defendant has also filed an affidavit in response to plaintiff's motion for summary judgment, and the record contains plaintiff's requests for admissions and defendant's responses thereto. While it is therefore probable that the case could be disposed of as on cross motions for summary judgment, the issues which I regard as dispositive are squarely presented in pure form by the defendant's 12(b)(6) motion, and I see no need to gauge the effect of anything in the record except the complaint and defendant's motion to dismiss.

For purposes of the present ruling, the following facts alleged in the complaint will be taken as correct: Plaintiff is an attorney, actively engaged in the practice of law, and bearing an excellent reputation. As the sole trustee of a private pension fund, plaintiff brought suit in his own name, and on behalf of a class of investors similarly situated, in the United States District Court for the Southern District of New York[1] asserting various violations of the securities laws in connection with an aborted tender offer. *Lowenschuss v. Kane*, 367 F.Supp. 911 (S.D.N.Y.). The case was assigned to the docket of Judge Kevin Thomas Duffy.

Apparently, Judge Duffy became suspicious that plaintiff had invested in the shares subject to the tender offer solely for the purpose of qualifying to bring

---

1. The action was filed in this district, but transferred to the Southern District of New York under 28 U.S.C. § 1404(a).

the class action, and with knowledge that the target company was bringing a legal action to enjoin consummation of the tender offer. On July 25, 1973, Judge Duffy dismissed plaintiff's action, and filed an opinion in support of that ruling. In the text of the opinion appears the following:

> "On February 2, 1973, two things happened: (1) The management of A & P announced its opposition to the tender offer and indicated that it would take legal action to prevent the consummation of the tender offer; and (2) the plaintiff placed an order for 2000 shares of A & P stock, which order was executed in two transactions on the New York Stock Exchange. I make no finding as to which of these events took place first.[1] Thereafter, but before February 13, 1973, plaintiff tendered the A & P shares in accordance with the G & W tender offer."

The footnote reads as follows:

> "1. It should be of some interest to the appropriate body of the Pennsylvania Bar whether the plaintiff, a lawyer, truly purchased these shares as an investment for his pension plan or merely as a vehicle for this litigation in which counsel fees are sought."

Promptly upon receipt of Judge Duffy's opinion, plaintiff communicated with Judge Duffy, and presented affidavits and documentary evidence which conclusively established: (1) that plaintiff placed the order for the shares in question approximately one hour before the first announcement of the A & P litigation; (2) that upon learning of the litigation, plaintiff attempted to cancel his order for the shares, but was unsuccessful; and (3) that the total amount of plaintiff's purchases of A & P shares on the date in question was approximately $38,000, and not just a "token" investment which might be expected if made for the purpose of litigation. On the basis of these facts, plaintiff repeatedly requested Judge Duffy to set the record

straight, by at least excising the offending footnote. Judge Duffy refused to alter his opinion or to remove the footnote, and instead forwarded a copy to the Disciplinary Board of the Supreme Court of Pennsylvania, apparently with the request that they conduct an investigation of plaintiff's conduct in the matter. The Disciplinary Board did investigate the matter, and on November 20, 1973, completely exonerated the plaintiff.

Early in 1974, plaintiff became aware that Judge Duffy's opinion had been published in the Advance Sheets of Commerce Clearing House's "Trade Cases" service. Plaintiff promptly notified CCH of his contention that Footnote No. 1 of Judge Duffy's opinion was false and defamatory. CCH sought permission from Judge Duffy to delete the footnote, but Judge Duffy refused to consent. Thereupon, CCH, at plaintiff's request, revised the first page of the opinion by adding an "editor's note" in juxtaposition to Footnote No. 1, as follows:

> "On November 20, 1973, the Disciplinary Board of the Supreme Court of Pennsylvania, acting pursuant to the request of the Honorable Kevin Thomas Duffy and after full investigation and review reached the final determination that Fred Lowenschuss, Esq. was not guilty of unprofessional conduct in violation of the Code of Professional Responsibility."

On or about April 9, 1974, plaintiff became aware that Judge Duffy's opinion appeared in the Advance Sheets of Federal Supplement, published by the defendant. Plaintiff immediately protested to the defendant that Footnote No. 1 was false and defamatory. Defendant communicated with Judge Duffy, Judge Duffy refused to consent to any change in the opinion as written, and the opinion was published without change. *Lowenschuss v. Kane*, 367 F. Supp. 911 (S.D.N.Y.1973).

The complaint also alleges that the defendant exercises some degree of selectivity in choosing which judicial opinions to publish; that the defendant could properly have added an editorial comment in the same vein as that supplied by CCH; and that, in persisting in publishing the opinion as originally written, the defendant acted maliciously and with full knowledge of the defamatory nature of the publication. Plaintiff seeks compensatory and punitive damages, and an injunction requiring the defendant to publish and circulate an "erratum" sheet containing matter adequate to neutralize the defamatory nature of Footnote No. 1, by referring to the outcome of the disciplinary proceedings.

██ Plaintiff concedes that the doctrine of absolute judicial immunity precludes any successful claim against Judge Duffy. *Garfield v. Palmieri*, 297 F.2d 526 (2d Cir. 1962), affirming 193 F.Supp. 137 (S.D.N.Y.1961). But plaintiff misconceives the true scope of the immunity doctrine when he argues that the publication by the defendant of Judge Duffy's absolutely privileged opinion is either not protected at all, or protected only conditionally, by the same privilege. In my opinion, the publisher of what purports to be neither more nor less than a correct rendition of an official judicial opinion is absolutely immune from any liability based upon the contents of such opinion.

This is one of those anomalous situations in which the law as I understand it is so clear that it is difficult to find controlling precedent to the same effect. Nevertheless, the opinions of both the District Court and the Court of Appeals in *Garfield v. Palmieri, supra,* are persuasive. There, a federal district judge was sued for allegedly defamatory material contained in a judicial opinion. On the basis of a lower court decision under state law, plaintiff contended that the statements in the opinion were only conditionally privileged, and that the privilege had been abused. The court held,

however, that federal, not state, law was controlling, and that the privilege was absolute. Of particular pertinence to the present case, plaintiff in *Garfield* also argued that, even if the opinion as originally filed was within the scope of judicial immunity, the judge's action, several months later, in sending the opinion to West Publishing Company for publication in the Federal Supplement was an independent republication of the original defamation, and was not within the protection of judicial immunity. Rejecting this argument, the Second Circuit, in a *per curiam* opinion, stated:

"We also hold, with the judge below, that Judge Palmieri's transmission to West Publishing Company, in compliance with West's request, of a copy of his written opinion previously filed in the office of the Clerk of his Court was within the perimeter marking the outlines of the absolute privilege of federal judges against civil liability, an immunity recognized for years as necessary in order that federal judges may act fearlessly in performing their vital responsibilities that include duties in the administration of justice as well as in the deciding of cases. Bar and Bench alike rely upon the West Reporter volumes as sources in which to find the decisions of the U. S. Courts of Appeals and of the U. S. District Courts; and we take judicial notice that an opinion of a federal circuit or district judge is considered 'not reported' until it appears in Federal Reporter or Federal Supplement." (297 F.2d at 527, 528.)

The circuit court also approved and adopted the district court opinion in that case, in which the following appears:

"There are no official published reports of the opinions of the federal district courts. The Federal Supplement published by West, as part of its reporter system, furnishes the only comprehensive compilation of such opinions and is recognized as authoritative by the courts and the profes-

sion. In a system of law based on *stare decisis* it is not enough that opinions of the court be available only to litigants and their counsel. It is essential that such opinions be readily accessible to the legal profession generally and to the courts for purposes of research, citation and general information as to the state and development of the law, as well as to others who may wish to refer to them. The sound and efficient administration of federal justice requires that such publication in a reporter system of the nature of the Federal Supplement be unfettered. This is in the interest not only of litigants, the legal profession and the courts themselves, but of the public generally. Such unfettered publication is a matter of public policy and outweighs and overrides any injury to an individual which might result from the application of such a rule." (193 F.Supp. 137 at 143.)

It can thus be appreciated that there are several concepts which enter into the justification for the rule of absolute judicial immunity with respect to the contents of judicial opinions. The judge must be absolutely free to express his views without any possibility that he will be held financially responsible because of the views expressed. The growth and development of the law, and indeed the day to day operation of the entire judicial system, depend in large measure upon the general availability of accurate copies of judicial opinions. In today's world, it is not feasible to attempt to separate the original filing of a judicial opinion from its publication in an official or semi-official publication. When a judge files an opinion, therefore, he knows that it is subject to being published in an official or semi-official reporting service. And, just as a judge's freedom to express his views in judicial opinions must not be constrained by the possibility that he might be held personally liable for the views expressed, the judge's freedom must not be constrained by the possibility that

those who publish his judicial opinions might be held subject to liability because of the judge's expressions. Moreover, the ready access to judicial opinions on the part of the legal profession and the public generally, recognized in *Garfield v. Palmieri, supra,* as constituting independently a complete justification for "republication" immunity for the judge, could not long survive if publishers were held liable on account of the contents of judicial opinions.

■■ Thus, I am satisfied that the absolute privilege based upon judicial immunity would extend to the defendant's publication in this case, even if it were true, as alleged in the complaint, that the defendant selects the opinions which it publishes, and could have rejected Judge Duffy's opinion in this case. The notion that the legal profession and the public generally would have ready and convenient access only to those judicial opinions selected because they contain nothing which could possibly be interpreted as derogatory, is unacceptable. But it is appropriate to note that the plaintiff is simply mistaken in this regard. It is a matter of common knowledge, so clear as to be a proper subject of judicial notice, that the ultimate decision as to which opinions are published in Federal Supplement rests with the courts, not with the West Publishing Company. West publishes all opinions submitted to it by the judges, precisely in the form approved by the judges whose opinions they are. The principles of *stare decisis* would be fatally undermined were it otherwise.

■ One further aspect of plaintiff's argument merits brief discussion. It is contended that, even if the principles discussed above preclude the imposition of liability for publishing Judge Duffy's opinion, including the footnote, as written, the defendant should have added a remedial "editor's note" similar to that inserted by CCH, once defendant had actual knowledge of the alleged defamation. (The defendant contends that,

since it did not learn of plaintiff's grievance until after publication of the opinion in the Advance Sheets, it was not feasible to take the corrective action requested. But this assertion creates merely a potential factual issue not now ripe for disposition.) In my view, there was no legal obligation on the defendant to add any such editorial comment.

■ Plaintiff argues that the fact that the defendant adds headnotes and a brief syllabus to each published opinion shows that there is some scope for editorial input on the part of the defendant, and that its failure to include the balancing comment suggested by the plaintiff amounts to an abuse of whatever qualified privilege the defendant may have had to publish accurate accounts of judicial proceedings. In short, plaintiff would analogize the situation to the publication by a newspaper or magazine of an account of proceedings in the courtroom: If the account is accurate and impartial, it is privileged, but if distorted or biased it is not. I reject this analogy and the plaintiff's argument. The headnotes and syllabus provided by West are obviously intended to be based upon the opinion as submitted by the judge; by no stretch of the imagination can they be regarded as an expression of West's views. The defendant may properly provide an outline of the opinions it publishes without running the risk of being deemed thereby to have assumed responsibility for the contents of those opinions.

Immunity from liability for the contents of judicial opinions does not stem from notions of infallibility, but from the belief that, in the long run, the harm caused by occasional errors is overshadowed by the need for unfettered judicial decisionmaking. While it is probably correct that most judges would not feel hampered in their freedom of expression by the thought that the publishers of their opinions might add editorial comments pointing out inaccuracies, as matters now stand that task is within the province of scholarly commentators, rather than the publishers of the Federal Supplement. I am not aware of any principle of law which mandates a change in this practice.

Moreover, apart from the implications of the First Amendment, plaintiff's proposed solution in the form of mandatory editorial comment would be simply unworkable. For example, no opinion in a criminal case could safely be published until all avenues of appellate review, collateral attack, and perhaps even executive clemency, had been exhausted. Stated otherwise, every person about whom something derogatory appeared in a judicial opinion would be at liberty to call the publisher's attention to alleged corrective actions taken by other tribunals, and to require the publisher to undertake independent verification of such alleged corrective action and append to the opinion some reference thereto. I do not believe existing law mandates such sweeping changes in the system of publishing judicial opinions.

For the foregoing reasons, the defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) will be granted. While I am inclined to believe that the actual harm suffered by this plaintiff is considerably less monumental in scope than plaintiff contends, perhaps the publication of this opinion by the defendant will have some indirect palliative effect.[2]

2. It bears mention, also, that on May 27, 1975, the Court of Appeals for the Second Circuit reversed Judge Duffy's ruling, in an opinion which specifically mentions plaintiff's initial attempts to cancel his purchase of the stock, 520 F.2d 255 (2d Cir. 1975).