Fred LOWENSCHUSS, Appellant,

v.

**WEST PUBLISHING COMPANY.**

No. 75–2431.

United States Court of Appeals,
Third Circuit.

Argued June 11, 1976.

Decided Sept. 16, 1976.

As Amended Oct. 12, 1976.

---

8. The employee could, of course, by-pass the Commission if its decision were delayed. 42 U.S.C. § 2000e–16(c).

Max Meshon, Meshon & Brener, William D. Parry, Philadelphia, Pa., for appellant.

James J. Orlow, Wasserman, Orlow, Kaye & Rubin, Philadelphia, Pa., for appellee.

Before VAN DUSEN, GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This case concerns the attempt of a lawyer to secure redress from West Publishing Company ("West"), a publisher of judicial opinions, for an allegedly defamatory footnote contained in a judge's opinion which West published without change. The United States District Court for the Eastern District of Pennsylvania dismissed the complaint. *Lowenschuss v. West Publishing Company*, 402 F.Supp. 1212 (E.D.Pa.1975). We affirm.

### I.

To place the alleged defamation in context, a brief exposition of the facts follows. Plaintiff Fred Lowenschuss is an active attorney at law "bearing an excellent reputation." *Lowenschuss v. West Publishing Company, supra,* 402 F.Supp. at 1213. As sole trustee of a private pension fund and on its behalf, he purchased shares of the Great Atlantic & Pacific Tea Company ("A&P") after learning of a tender offer for the stock. Shortly after he had placed his order for the stock, Lowenschuss discovered that A&P management intended to oppose the offer. He attempted to cancel the purchase order, but was unsuccessful because the order had already been executed.

Subsequently, the United States District Court for the Southern District of New York issued a preliminary injunction prohibiting consummation of the tender offer. Lowenschuss immediately filed suit in the Eastern District of Pennsylvania on behalf of himself and a class of similarly situated investors charging breach of contract and violations of the securities laws in connec-

tion with the aborted tender offer. The case was transferred to the Southern District of New York and assigned to Judge Kevin T. Duffy who was presiding over the case involving the offeror and A&P's management. Judge Duffy dismissed Lowenschuss' complaint in *Lowenschuss v. Kane*, 367 F.Supp. 911 (S.D.N.Y.1973).

Unfortunately, the judge did not confine himself simply to dismissing the complaint. Rather, while he stated that he was making no finding as to the sequence of events, he intimated that Lowenschuss may have purchased the shares of A&P stock *after* learning of the opposition to the tender offer solely for the purpose of qualifying to bring the class action and with knowledge that the target company was bringing a legal action to enjoin the tender offer transaction. The controversial footnote 1 of Judge Duffy's opinion, 367 F.Supp. at 913, reads in its entirety:

> It should be of some interest to the appropriate body of the Pennsylvania Bar whether the plaintiff, a lawyer, truly purchased these shares as an investment for his pension plan or merely as a vehicle for this litigation in which counsel fees are sought.

After the opinion was filed, counsel for Lowenschuss wrote to Judge Duffy requesting that he withhold dissemination of his opinion until he had considered Lowenschuss' petition for rehearing. The subsequent petition contained affidavits from Lowenschuss and from his securities broker, in addition to the time-stamped stock purchase order, as evidence that the purchase occurred before Lowenschuss had learned of the opposition to the tender offer. Judge Duffy remained adamant, however, and in a statement endorsing his original opinion, characterized the footnote as "merely meant as a suggestion to the appropriate body to make whatever findings and conclusions they may deem necessary." The judge further stated that he was "not

condemning the plaintiff here—by the footnote in the opinion I merely seek to awaken the Bar to make its own findings." [1]

In order to ensure that the Bar was awakened, Judge Duffy forwarded a copy of his opinion to the Disciplinary Board of the Supreme Court of Pennsylvania. Within a short time, the Board informed the judge and Lowenschuss that Lowenschuss had "not been guilty of unprofessional conduct in violation of the Code of Professional Responsibility." Lowenschuss' vindication was more apparent than real. As the offending footnote was not thereupon excised from the opinion, it appeared intact in Commerce Clearing House's *Trade Cases* and in West's *Federal Supplement.*

Lowenschuss prevailed upon Commerce Clearing House to insert the following editorial remarks in its report of the case:

> Note: In connection with Footnote 1 . . . on November 20, 1973, the Disciplinary Board of the Supreme Court of Pennsylvania, acting pursuant to the request of the Honorable Kevin Thomas Duffy and after full investigation and review reached the final determination that Fred Lowenschuss, Esq. was not guilty of unprofessional conduct in violation of the code of professional responsibility.—CCH

Lowenschuss importuned West to include a similar addendum in its bound volumes of 367 Federal Supplement. West consulted Judge Duffy, who was unwilling to delete his footnote notwithstanding the subsequent developments exonerating Lowenschuss. West thereupon felt obliged to publish the opinion as originally written and without editorial comment, as is its unvarying practice. Judge Duffy's refusal to cooperate in clearing Lowenschuss' professional reputation thus resulted in the printing of the offending footnote verbatim and without explanation in volume 367 of the Federal Supplement.

1. The judge thus publicly alerted the Pennsylvania Bar to a possible violation of the Pennsylvania Code of Professional Responsibility by one of its members, before a hearing could be held or an inquiry conducted by the Disciplinary Board, notwithstanding the injunction of Rule 17–9 of the Rules of the Supreme Court of Pennsylvania that "[c]omplaints submitted to The [Disciplinary] Board or [Chief Disciplinary] Counsel shall be confidential."

Thereupon Lowenschuss filed this action in the Court of Common Pleas of Philadelphia County against West, seeking a mandatory injunction ordering West to print an explanatory addendum to footnote 1 and cause it to be inserted into volume 367 of the Federal Supplement and an award of "general, compensatory and punitive or exemplary damages." West removed the action to the United States District Court for the Eastern District of Pennsylvania under 28 U.S.C. § 1441(a) (1970).[2]

The district judge dismissed Lowenschuss' complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. In a thoughtful and thorough opinion, Judge Fullam began with the premise that Judge Duffy's absolute judicial immunity precluded any action against him for writing or transmitting the opinion to West, as Lowenschuss implicitly conceded by not naming Judge Duffy as a defendant herein. *See Garfield v. Palmieri*, 297 F.2d 526 (2d Cir. 1962). Judge Fullam then extended an absolute privilege to West as a "semi-official reporting service." Moreover, according to the district judge, compelling West to print editorial commentary whenever an inaccuracy appears in an opinion would implicate the First Amendment and would be "simply unworkable."

The judge expressed the hope that the publication of his opinion, which contained the information that Lowenschuss had been exonerated by the Disciplinary Board, would "have some indirect palliative effect." In addition, before the district court rendered its decision the United States Court of Appeals for the Second Circuit reversed Judge Duffy's dismissal of Lowenschuss' complaint in the original class action suit in *Lowenschuss v. Kane*, 520 F.2d 255 (2d Cir. 1975). The Court of Appeals set forth, 520 F.2d at 259–60, the proper chronology of Lowenschuss' purchase of the A&P stock before learning of management's opposition to the tender offer and of

his subsequent attempt to cancel the purchase order. Although the record has been thus set straight in a number of published opinions, Lowenschuss continues to strive to rebut more effectively Judge Duffy's footnote by eradicating it at its source.

## II.

■ Although good advice offered too late may be worse than none at all, we fear that Lowenschuss is unfortunately in the wrong court at the wrong time. When Judge Duffy refused to alter his opinion even in light of the affidavits and documentary evidence submitted to him by Lowenschuss, a possibly fruitful avenue of redress would have been a petition for an order of expungement filed in the United States Court of Appeals for the Second Circuit. That is not to say that the Court of Appeals would undoubtedly have granted the relief sought. We recognize that a court ordinarily is given broad discretion in the writing and publication of its opinions, but we believe that the facts of this case and the potential damage to Lowenschuss' professional reputation might well have persuaded the Court of Appeals to grant the extraordinary remedy of expungement of the offending footnote. When it appeared necessary, we have stayed a district court order for publication of an opinion pending resolution of possible improper conduct of a lawyer by the disciplinary authorities and subsequently the district court also impounded the opinion of its own volition. *See* Order of July 11, 1975, *In the Matter of Goldchip Funding Co.,* No. 75–1674 (3d Cir.).

■ However, courts within the Third Circuit are understandably unwilling to interfere with an opinion of a court in the Second Circuit, even to the extent of ordering a separate addendum to a footnote. While we decide this case on another ground entirely, we are constrained to observe that an order elaborating on an official opinion of a court of another circuit, such as is sought here, is undesirable on

---

**2.** Original jurisdiction existed by virtue of 28 U.S.C. § 1332 (1970) as the plaintiff is a citizen of Pennsylvania, West is incorporated and has its principal place of business outside of Pennsylvania, and over $10,000 is in controversy.

policy grounds alone as an unwarranted intrusion on the internal affairs of a co-equal, sister circuit.

## III.

■ West defends this libel action on several theories. First, it argues for an absolute privilege which derives from a judge's absolute privilege to publish defamatory material within the scope of his judicial duties, a theory which the district court appears to have accepted. West would also assert an independent absolute privilege by virtue of its status as a semi-official reporter, an "arm of the Court," which function it analogizes to that of the United States Government Printing Office. Further, West would claim for itself the privilege accorded the publication of a fair and accurate report of a judicial proceeding by New York,[3] the place of first publication, and by Pennsylvania,[4] the forum state and the place of alleged injury. *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495–97, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). Finally, West puts forward the affirmative defense of truth, which is usually a complete defense to libel, by insisting that it did nothing more than publish a true and accurate version of Judge Duffy's opinion.

Yet another issue emerged at oral argument in this court. The remedy sought by Lowenschuss, a court order coercing West to publish a corrective page, was questioned by the panel as possibly violative of the First Amendment. The parties were asked to comment on the applicability of *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974), in which the United States Supreme Court struck down as unconstitutional a Florida right-of-reply statute which required a newspaper to give free access to any candidate for nomination or election whom it had attacked. West indicated that, by arguing for an absolute privilege, it had not intended to waive the First Amendment ground.

Since we conclude that verbatim publication of judicial opinions by West is absolutely privileged, we do not reach the other theories raised by brief and in oral argument.

We take as our starting point *Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973). While the facts of that case differ in several important particulars from the instant one, it establishes certain helpful principles. We find especially instructive its discussion of the liability of the Public Printer and the Superintendent of Documents for the contents of a Congressional committee report printed and distributed by the United States Government Printing Office upon order of the House of Representatives.

The Public Printer and the Superintendent of Documents argued that they were protected by the absolute legislative immunity conferred on members of Congress by the Speech or Debate Clause, Art. 1 § 6, cl. 1 of the United States Constitution. The Court agreed that they were immune but only to the extent that their publication was to Members of Congress and used for legislative purposes. Publication and distribution to the public generally the Court deemed "beyond the reasonable bounds of the legislative task" and thus unprotected by the legislators' conceded immunity. *Id.* at 315, 93 S.Ct. at 2026.

■ We glean the principle from *McMillan* that even though an absolutely immune official directs the publication of a document, the publisher is not, without more, thereby protected. *Id.* at 315–16, 93 S.Ct. 2018. Thus, West does not necessarily enjoy an absolute privilege to publish a judicial opinion, notwithstanding that the authoring judge who submitted it is protected by an absolute privilege. This is true despite West's averment, in response to Lowenschuss' request for admissions, that by implication from its contract with subscribers "to publish the complete and accurate texts of opinions in cases argued and decid-

---

**3.** 8 N.Y. Civil Rights Law § 74 (McKinney); *Edmiston v. Time Inc.*, 257 F.Supp. 22, 25 (S.D. N.Y.1966).

**4.** *Binder v. Triangle Publications Inc.*, 442 Pa. 319, 275 A.2d 53, 56 (1971).

ed in the federal courts" it was obliged "to the several Judges of the United States District Courts and others, to publish complete and accurate texts of opinions in cases decided by them and submitted by them for publication."

■ *McMillan* teaches that an absolute privilege exists only when the publication is an intrinsic part of the official function which the original grant of immunity or privilege was intended to protect. If the verbatim publication and dissemination of judicial opinions to the public serves an essential judicial purpose, then an official publisher may conceivably assert the absolute privilege available to the authors of opinions it publishes. West does not claim the benefit of any constitutional or express statutory immunity as a publisher of judicial opinions. The *McMillan* Court did not consider the scope of the judicial function as it expressly did not address "publications of the Judicial Branch and the legal immunities that may be attached thereto." *Id.* at 325 n. 16, 93 S.Ct. at 2031.

The Court, however, in the context of media reporting, has adverted to "[t]he public interest in accurate reports of judicial proceedings." *Time, Inc. v. Firestone, supra,* 424 U.S. 448, 96 S.Ct. 958, 967, 47 L.Ed.2d 154 (1976). We perceive an even greater public interest in and need for access to verbatim reports of judicial decisions without excessive delay or expense.

Justice Cardozo has written:

*Stare decisis* is at least the everyday working rule of our law.

\* \* \* \* \* \*

Every judgment has a generative power. It begets in its own image. Every precedent, in the words of Redlich, has a "directive force for future cases of the same or similar nature." [Footnotes omitted.] B. Cardozo, The Nature of the Judicial Process 20, 21–22 (1963).

As ours is a common-law system based on the "directive force" of precedents, its effective and efficient functioning demands wide dissemination of judicial decisions.

That segment of the public engaged in the practice of law necessarily must remain abreast of decisions which subtly shape the contours and the body of the evolving law. Practicing attorneys must be able easily to locate authoritative precedents for their positions. Courts must be able to rely on briefs and citations of attorneys practicing before them and on their own research efforts to direct them quickly to the relevant cases. Even that part of the law which consists of codified statutes is incomplete without the accompanying body of judicial decisions construing the statutes.

■ Accordingly, under our system of jurisprudence the judiciary has the duty of publishing and disseminating its decisions. Not only should a judge perform unhesitatingly the "duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants," [5] he must be unhampered in his publication of his decisions in those cases. Hence, a judge is absolutely privileged to publish even defamatory statements in his judicial opinions, so long as "the publication has some relation to the matter before him." Restatement of Torts § 585 (1936).

■ Recognizing the crucial role which publication of judicial decisions plays in our legal system, the Second Circuit has held that transmission of an opinion to West is within the judicial function and is itself absolutely privileged. *Garfield v. Palmieri,* 297 F.2d 526, 527 (2d Cir. 1962). It does not necessarily follow, however, that West's publication of a judicial opinion is also absolutely privileged.

We have seen that *Doe v. McMillan, supra,* provides support for extending an absolute privilege in limited circumstances to an official publisher, but at least one court, while acknowledging the absolute privilege of an official reporter of judicial decisions, has expressly refused to find unofficial reporters similarly protected. *Murray v. Brancato,* 290 N.Y. 52, 48 N.E.2d 257, 259

5. *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967).

(1943). The *Murray* court's ruling, however, was directed only to reports of decisions of New York state courts, official publication of which is expressly provided by constitutional and statutory provisions. Where, as here, no official reporter exists, a convincing argument may be made that West, an unofficial reporter, performs the same function as an official reporter and should be accorded the identical protection from liability for defamation when it publishes verbatim opinions of the courts. *See* Annot., 146 A.L.R. 913, 916 (1943).

There is no doubt that lawyers and courts rely on West's comprehensive and dependable publication system for reports of federal district and circuit court opinions and decisions. For example, *A Uniform System of Citation* 1:2:3(b) at 17 (11th ed. 1967) admonishes its readers to "[c]ite only to West reports" of federal courts of appeals and district court cases. Rule 21(1)A(e)(ii) of the Rules of the United States Court of Appeals for the Third Circuit provides that "citations shall be to the . . . [West] Federal Reporter, Federal Supplement . . . ." In view of the foregoing rule, there is merit to West's contention that it is the semi-official reporter for the federal court, at least in this circuit.

Moreover, even where States designate official reporters for decisions of their courts, citation to West Reports, because of the institutional character of the West reporting system, is generally regarded as desirable by the courts and the legal profession. Thus, under *A Uniform System of Citation*, state court cases are properly cited not only to the official reports but also to the West Reports. *Id.* at 1:2:4. The Third Circuit's Rule 21(1)A(e)(ii) directs that citations in briefs "to state court decisions should be to the West Reporter system wherever possible with an identification of the state court." It is apparent that West's verbatim publication and effective dissemination of judicial opinions serves an intrinsic function in our system of jurisprudence.

Therefore, we believe we should extend the rationale of *Doe v. McMillan* to the publication of a judicial opinion in the West Reports precisely as received and upon submission by the courts. We therefore hold that West's verbatim publication of judicial opinions and decisions is absolutely privileged.

The order of the district court will be affirmed.