1 F.3d 1241
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Franklin D. POTTS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 92-6267.
 United States Court of Appeals, Sixth Circuit.
 Aug. 9, 1993.
 
 Before MILBURN and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Franklin D. Potts appeals the district court's grant of summary judgment affirming the Secretary's denial of his claims for social security and supplemental security income benefits. On appeal, the issues are (1) whether the Secretary's final decision denying benefits is supported by substantial evidence when based upon the record as a whole, (2) whether the Secretary applied the proper legal standards to the evidence, and (3) whether the district court erred in failing to address claimant's specific objections to the magistrate judge's report and recommendation. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Plaintiff filed his initial application for disability insurance benefits on September 6, 1988, and it was denied on November 7, 1988. On August 29, 1988, plaintiff also filed an application for supplemental security income, which was denied on November 10, 1988. Plaintiff filed a request for reconsideration on November 22, 1988; however, his claims were again denied on January 13, 1989.
 
 
 3
 A hearing was held before an Administrative Law Judge ("ALJ") on May 2, 1989. The ALJ denied the claims in a decision dated May 30, 1989. Thereafter, on June 15, 1989, plaintiff requested review of the hearing decision, and the Appeals Council remanded the case back to the ALJ for further proceedings.
 
 
 4
 On June 13, 1990, a supplemental hearing was held before a different ALJ. In a decision dated September 7, 1990, the ALJ again denied the claims. Plaintiff filed a request for review of the second hearing decision on September 12, 1990, and in an order dated April 18, 1991, the Appeals Council upheld the ALJ's decision, which became the final decision of the Secretary.
 
 
 5
 Plaintiff filed a timely action for judicial review of the Secretary's final decision in the district court on June 18, 1991, and the matter was referred to a magistrate judge. On June 25, 1992, the magistrate judge issued a report and recommendation in which he recommended that summary judgment be entered in favor of the Secretary because substantial evidence supported the Secretary's decision. After de novo review of the magistrate judge's report and recommendation in light of claimant's written objections, the district court adopted the magistrate judge's recommendation, granted summary judgment in favor of the Secretary, and dismissed the case. This timely appeal followed.
 
 B.
 
 6
 Plaintiff was 55 years old at the time of the first hearing. He has an eight-grade education, but asserted that he only received the equivalent of a sixth-grade education. He testified that he occasionally drives an automobile and walks a half-mile to a mile per day. Plaintiff has breathing problems particularly when the weather is hot, and he uses an inhaler every four to six hours. He walks for about 20 minutes each day. He goes shopping for himself. When he cannot walk any farther, plaintiff testified that he sits and rests for 10 to 15 minutes until he can walk again. He smokes a pack of cigarettes every two days although his doctors have told him to stop smoking. Plaintiff testified, however, that he becomes nervous or upset when he stops smoking.
 
 
 7
 Plaintiff can dress himself while sitting, but cannot clean his apartment because he has problems with stretching and bending. His friend, Ms. Willie Joe Crossland, does his laundry and most of his cooking. Plaintiff testified that he occasionally becomes confused and cannot concentrate. He further testified that he must urinate approximately every 20 minutes.
 
 
 8
 Plaintiff has previously worked as a service station attendant and as a janitor, yard man, roofer's helper, laborer, and wood shop worker. He seeks disability and supplemental security income payments for the period beginning August 22, 1988. He contends that he is unable to work due to respiratory problems, urinary frequency, chest pain, arthritis of the knee, back pain, and anxiety. The ALJ found that plaintiff had not worked since August 22, 1988, the alleged onset date of his disability.
 
 
 9
 Plaintiff, a veteran of military service, has been treated for his various ailments by the Department of Veterans Affairs (VA) Medical Center in Murfreesboro, Tennessee. Plaintiff has also been treated at a VA Outpatient Clinic for various minor problems such as flu, sinusitis, and arthritic-type complaints. Anxiety has also been reported and reduction in life stresses has been recommended. Plaintiff also has a history of suffering heat exhaustion and has had surgery for hemorrhoids. Plaintiff has also complained of stomach problems and gastritis has been diagnosed, but no evidence of active ulcer disease has been found.
 
 
 10
 An x-ray of plaintiff's chest taken on October 13, 1987, showed mild chronic obstructive pulmonary disease and aortic arteriosclerosis. He was hospitalized at the VA Hospital after suffering chest pains on February 22, 1988. A MUGA scan, echocardiogram, and an exercise tolerance test were performed at that time. The results of these tests were: (1) the echocardiogram was within normal limits, (2) the exercise tolerance test was within normal limits, and (3) the MUGA scan had an ejection fraction of 71. The discharge summary also noted that "after the patient was observed for many days on the ward without any chest pain, he was discharged home in a stable condition." R. 195.
 
 
 11
 Because the VA will not perform disability evaluations for the Social Security Administration, a consultative examination and medical assessment were performed by Dr. Qamar Khan on October 6, 1988. Dr. Khan's findings were: (1) chronic obstructive pulmonary disease, (2) traumatic arthritis of the knee with connective tissue inflammatory disease of both extremities, and (3) history of chronic gastritis with peptic ulcer disease. Dr. Khan also completed a medical assessment in which he stated that plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds, could stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Dr. Khan noted that plaintiff had been coughing up "blackish sputum" and that a pulmonary function test suggested "moderate obstructive pulmonary disease." R. 203. Dr. Khan further noted that plaintiff did have traumatic arthritis of the knee, as well as fibromyositis but that the "arterial system below the popliteal region is normal." R. 204.
 
 
 12
 Plaintiff visited the VA for hearing tests on March 6, 1989. In his right ear, he suffered a "mild falling to moderate sensorineural loss." In his left ear, he had a "mild falling to severe sensorineural loss." However, the examiner noted that plaintiff had "good speech discrimination" in both ears. The examiner attributed plaintiff's hearing loss to "a combination of age and noise." R. 266.
 
 
 13
 Plaintiff was again hospitalized from September 5, 1989, until September 9, 1989, due to "benign prostatic hypertrophy," which was treated with "TURP" (transurethral resection prostatectomy). The discharge diagnosis was: (1) benign prostatic hypertrophy, (2) urinary retention, (3) hiatal hernia, (4) chronic obstructive pulmonary disease, (5) peripheral vascular disease, and (6) insomnia.
 
 
 14
 In March 1990, plaintiff went to the VA hospital complaining that his bladder condition had not done well since his September 1989 surgery. A urinary tract infection with stricture was diagnosed. The physician indicated that it would take plaintiff four months to recover and stated that he could not engage in activities during that time. Plaintiff related that he also experienced indigestion and diarrhea at times and also complained of his nerves.
 
 
 15
 Plaintiff was also hospitalized from July 9, 1990, until July 14, 1990. On this occasion the diagnosis was:
 
 
 16
 Prostatourethritis with urinary retention, frequency and dysuria. He has positive history of benign prostatic hypertrophy and is scheduled for cystoscopy.
 
 
 17
 R. 334. After an operation, plaintiff's condition was "satisfactory."
 
 
 18
 At the supplemental hearing, plaintiff testified that he could not lift the 50 pounds as opined by Dr. Khan because he had recently been told that he had a degenerating disk in his back that was about to rupture and that
 
 
 19
 the problem that I have is when I, when I go to try to lift anything now it--I have like a bee sting in the back, in, in the middle of my, lower part of my back....
 
 
 20
 R. 81. Plaintiff also testified that he had a bad stomach and had to take Maalox and Zantac. He again testified that due to his respiratory condition, he could not walk very far, especially in the heat and humidity.
 
 
 21
 According to plaintiff, his left knee hurts and in the winter he can hardly walk because it tightens up. Plaintiff testified that he still has chest pains and that he takes nitroglycerin.[1] Plaintiff drives an automobile only once or twice a week, mostly for short distances. He again testified that he does some housework; however, when he tries to vacuum or straighten up the house, he has to rest after approximately 30 minutes. Plaintiff testified that his friend, Willie Crossland, continues to help him clean his house, wash his clothes, and usually cooks his meals for him. He also testified that after sitting for a period of time, he experiences some stiffness which makes it hard for him to move around.
 
 
 22
 In addition, plaintiff's friend, Ms. Willie Crossland, appeared as a witness at the hearing. She generally corroborated his testimony. Ms. Crossland also described plaintiff's condition as going downhill for the last year or two.
 
 
 23
 Dr. George Copple, a vocational expert, testified at the first ALJ hearing that plaintiff could perform light, unskilled work and that he could return to his prior employment as a service station attendant. Ms. Patsy Bramlett, another vocational expert, testified at the second ALJ hearing that plaintiff could perform his prior work as a gas station attendant and sedentary work in assembly jobs. In response to cross-examination, she stated that plaintiff's having to go to the rest room every twenty minutes would interfere with his ability to do those jobs. However, we note again that plaintiff had a transurethral resection prostatectomy during his hospitalization in September 1989 with satisfactory results and that he was also treated for a urinary tract infection with satisfactory results. Thereafter, each time he was treated for a urination problem, the results were good.
 
 
 24
 The ALJ found that plaintiff had the residual functional capacity to perform work that did not involve lifting more than 50 pounds, that his past relevant work as a gas station attendant did not require activities precluded by that limitation, and that his impairments do not prevent him from performing his past relevant work. Consequently, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act and denied his claims for benefits.
 
 II.
 A.
 
 25
 Pursuant to 42 U.S.C. Sec. 405(g), this court has jurisdiction to review the Secretary's decisions. Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching his conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility. See Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984).
 
 
 26
 In determining whether the Secretary's factual findings are supported by substantial evidence, we must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. See Born v. Secretary of Health and Human Services, 923 F.2d 1168, 1173 (6th Cir.1990). If supported by substantial evidence, the Secretary's decision must be affirmed even if a reviewing court would decide the matter differently, see Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam), and even if substantial evidence also supports the opposite conclusion, see Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (en banc). Moreover, this court will not base its decision on a single piece of evidence and disregard other pertinent evidence in making a substantial evidence review. See Mowery v. Heckler, 771 F.2d 966, 970 (6th Cir.1985).
 
 
 27
 A social security disability claimant bears the ultimate burden of proof on the issue of disability. See Richardson v. Heckler, 750 F.2d 506, 509 (6th Cir.1984). However, once a claimant makes out a prima facie case that he cannot perform his usual work due to his disability, the burden of proof then shifts to the Secretary to show that there is work in the national economy which the claimant can perform. See Martonik v. Heckler, 773 F.2d 236, 239 (8th Cir.1985); Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980). The Secretary must prove that having considered the claimant's present job qualifications such as age, experience, education, and physical capacity, and the existence of jobs to match those qualifications, the claimant retains the capacity to perform a different kind of job. See Young v. Secretary of Health and Human Services, 925 F.2d 146, 148 (6th Cir.1990); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir.1990).
 
 
 28
 On occasion, the Secretary can satisfy his burden by relying on the medical vocational guidelines; however, where a claimant's functional limitations do not fit the pattern of the medical vocational guidelines, the testimony of a vocational expert may be used to satisfy the Secretary's burden of proof regarding the availability of jobs which claimant could perform. Young, 925 F.2d at 148-49. The grids are not fully applicable if the claimant suffers from a significant nonexertional impairment. See Damron v. Secretary of Health and Human Services, 778 F.2d 279, 282 (6th Cir.1985). A vocational expert is generally consulted where a claimant has significant nonexertional limitations. See Buck v. Bowen, 885 F.2d 451, 455 (8th Cir.1989); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir.1988). The testimony of a vocational expert must be based on a hypothetical question which accurately portrays the claimant's physical and mental impairments. See Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir.1987).
 
 B.
 
 29
 Plaintiff argues that substantial evidence does not support the Secretary's final decision that he is not entitled to benefits and that the Secretary did not employ the correct legal standards in reaching his final decision. The Secretary uses the following five-step analysis to determine if an individual is disabled within the meaning of the Social Security Act.
 
 
 30
 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
 
 
 31
 2. An individual who does not have a severe impairment will not be found to be disabled.
 
 
 32
 3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpt. P of the regulations, a finding of disability will be made without consideration of vocational factors.
 
 
 33
 4. An individual who can perform work that he or she has done in the past will not be found to be disabled.
 
 
 34
 5. If an individual cannot perform his or her past work, other factors, including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.
 
 
 35
 In this case, the ALJ found that plaintiff had a severe impairment based upon a combination of impairments such as chronic obstructive pulmonary disease, arthritis of the knee, and a history of a hiatal hernia with gastritis and post-transurethral resection. The ALJ also found that plaintiff had not engaged in substantial gainful activity since August 22, 1988. However, the ALJ found that plaintiff's subjective complaints, including pain, are not fully supported by the record as a whole and that his impairments did not prevent him from performing his past relevant work. Accordingly, the ALJ found that plaintiff was not "disabled" as defined in the Social Security Act. Thus, his claim for social security disability benefits was denied. Further, because the disability considerations for entitlement to supplemental security income are the same as the disability considerations for entitlement to social security disability benefits, the claim for supplemental security income was also denied. See 20 C.F.R. Secs. 416.1100, 416.1102, 416.1201 and 416.1205.
 
 C.
 
 36
 Plaintiff argues that the medical evidence of record supports his claim of disability. He asserts that the ALJ failed to consider Dr. Khan's diagnosis of fibromyositis [fibrositis] as evidence of disability. Plaintiff correctly points out that this circuit has found that benefits can be awarded on the basis of a severe case of fibrositis. See Preston v. Secretary of Health and Human Services, 854 F.2d 815 (6th Cir.1988) (per curiam). However, in Preston, the claimant's treating physician, Dr. Crabbs, testified at the hearing before the ALJ and described the claimant's condition as one of the worst cases of fibrositis he had ever seen. The physician also described the effects of the fibrositis in great detail. Id. at 818.
 
 
 37
 Unlike the situation in Preston, however, there is no evidence in the record as to the severity or the effects of plaintiff's fibromyositis. Rather, the record in this case contains only Dr. Khan's diagnosis of fibromyositis. Moreover, although Dr. Khan diagnosed fibromyositis, he also completed a medical assessment of ability to do work-related activities which indicated that plaintiff could lift 50 pounds occasionally, 25 pounds frequently, stand and/or walk for six hours during an eight-hour workday, and sit for six hours in an eight-hour workday. Since this assessment was predicated, at least in part, on Dr. Khan's diagnosis of fibromyositis, there is no evidence of record which would indicate that plaintiff's fibromyositis or fibrositis was disabling.
 
 D.
 
 38
 Plaintiff also argues that the ALJ erred in finding that his subjective complaints of pain were not credible. The standard used in this circuit to evaluate subjective complaints of disabling pain is two-pronged. First, it must be determined whether there is objective medical evidence of an underlying medical condition. If there is such objective medical evidence, then it must be determined:
 
 
 39
 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or,
 
 
 40
 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 41
 Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1369 (6th Cir.1991) (quoting Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.1986)).
 
 
 42
 Plaintiff argues, citing Glass v. Secretary of Health and Human Services, 517 F.2d 224 (6th Cir.1975) (per curiam), that for the ALJ to deny the credibility of his testimony, the ALJ's opinion must be supported by medical or other evidence. Plaintiff asserts that in this case he has made out a prima facie case of disability because his testimony as to his medical condition and urination problem is supported by the clinical studies and medical evidence. However, plaintiff's reliance on Glass is misplaced because the decision in that case relies on the standard for evaluating subjective complaints of disabling pain which existed prior to the Social Security Disability Benefits Reform Act of 1984. See McCormick v. Secretary of Health and Human Services, 861 F.2d 998, 1002 (6th Cir.1988). The standards for evaluating subjective complaints of disabling pain set forth in the 1984 act and adopted by this court in Duncan continue to apply. Id. at 1003.
 
 
 43
 This court has held that credibility determinations with respect to subjective complaints of pain rest with the ALJ. Tyra v. Secretary of Health and Human Services, 896 F.2d 1024, 1030 (6th Cir.1990); Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir.1987) (per curiam). Although subjective testimony of pain cannot be dismissed out of hand and must be considered along with such other criteria as objective medical facts, diagnoses, and expert medical opinions, there is not support in the case law for the proposition that the subjective testimony of the claimant must be fully credited. Townsend v. Secretary of Health and Human Services, 762 F.2d 40, 44 (6th Cir.1985).
 
 
 44
 In this case, substantial evidence supports the Secretary's conclusion that plaintiff does not experience disabling pain. The ALJ found that
 
 
 45
 [i]n this case, the claimant's testimony as to the severity of his pain and the extent of his limitations is not fully supported by the record as a whole.
 
 
 46
 R. 287. As the ALJ noted, no physician described plaintiff as totally disabled. Moreover, in his assessment of plaintiff's physical capabilities, Dr. Khan described plaintiff's capabilities as consistent with an individual who is able to perform moderate work activity. Further, both ALJs also considered plaintiff's daily activities as being somewhat inconsistent with a totally disabled individual. As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain. See Blacha v. Secretary of Health and Human Services, 927 F.2d 228, 231 (6th Cir.1990) (per curiam).
 
 
 47
 Finally, at his supplemental hearing, plaintiff testified that his ability to lift and carry has been limited below the assessment made by Dr. Khan because he had been diagnosed as having degenerative disc disease in his lower back. According to plaintiff, when he lifts something, he suffers a pain similar to a bee sting in his back. However, plaintiff submitted no objective medical evidence to support his testimony that he has been diagnosed with degenerative disc disease, much less his subjective complaint of disabling pain. Accordingly, substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints of disabling pain are not supported by the record. Moreover, there is no medical proof in the record that any combination of plaintiff's alleged impairments caused a disabling condition.
 
 E.
 
 48
 Plaintiff also argues that the ALJ, magistrate judge, and district court failed to properly evaluate his alleged problem with the frequency of his having to urinate when they determined that he could perform his prior relevant work. In this case, the record reveals that plaintiff was treated extensively by the genito-urinary clinic at the VA hospital.
 
 
 49
 Prior to January 1989, all of this treatment was for impotence. In January 1989, plaintiff first complained of urination frequency, which his physician believed was related to his medication. After treatment for the problem, plaintiff reported to the clinic in September 1989 that he had good bladder control. In March 1990, plaintiff again complained of urination frequency. He was diagnosed as having a urinary tract infection, was placed on antibiotics, and was told that he could not work for four months. This is the only indication in the record that plaintiff could not work, and it was only for a four-month period.
 
 
 50
 In July 1990, plaintiff was again treated for urinary problems. At that time he reported to his physicians that he "sometimes" had to urinate every 30 minutes. R. 333. Following treatment, plaintiff was discharged with a good prognosis. Thus, there is no indication in the record that plaintiff suffered from urination frequency for a period exceeding one year. Thus, the ALJ did not err in not presenting a hypothetical on urination frequency to the vocational expert. Further, since there is no evidence of record that the alleged problem with urination frequency lasted 12 months or longer, the vocational expert's response to the question from plaintiff's counsel that if plaintiff needed to urinate every 20 minutes he would essentially be unemployable is not grounds for concluding that he could not return to his past work.
 
 F.
 
 51
 Finally, plaintiff argues that the district court erred in failing to respond to his specific objections to the magistrate judge's report and recommendation. However, his brief on appeal with regard to this issue is nothing more than a reargument of the facts and issues before the ALJ. In this case, the district court was sitting not to rehear the case; rather, its function was to determine whether substantial evidence supported the Secretary's decision. Thus, in this case, the district court was not the finder of fact; the ALJ was the finder of fact, and the district court was acting as a reviewing court. In that capacity, the matter was referred to the magistrate judge who recommended that the Secretary's finding be affirmed. After de novo review, the district court entered an order specifically adopting the report and recommendation of the magistrate judge "as fully as if copied verbatim herein."
 
 
 52
 Generally, a court is given broad discretion in the writing of its opinions. See Lowenschuss v. West Pub. Co., 542 F.2d 180, 183 (3rd Cir.1976). The scope and length of an opinion in a particular case necessarily rests within the sound discretion of the judicial body. See Curci v. United States, 577 F.2d 815, 818 (2d Cir.1978). See also Westside Property Owners v. Schlesinger, 597 F.2d 1214, 1216 n. 3 (9th Cir.1979):
 
 
 53
 Appellants contend lastly that the district court erred because its opinion did not expressly respond to or comment upon every factual and legal argument made by appellants. We do not believe that the district court has an obligation to address explicitly every point raised by the parties.
 
 
 54
 Given the extremely narrow scope of review of the Secretary's decision by the district court, once the district court concluded that substantial evidence supported the Secretary's conclusion, the district court did not abuse its discretion in failing to respond to every objection made by plaintiff to the report and recommendation of the magistrate judge.
 
 III.
 
 55
 For the reasons stated, the summary judgment of the district court is AFFIRMED.
 
 
 
 [1]
 At oral argument, counsel for plaintiff conceded that no physician had ever prescribed nitroglycerin for plaintiff; rather, plaintiff had purchased his nitroglycerin "on the street."